## RONZIO et al. v. DENVER & R. G. W. R. CO.

### No. 2161.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1940.

Mahlon E. Wilson, of Salt Lake City, Utah (Mitchell Melich, of Moab, Utah, and Robert C. Wilson, of Salt Lake City Utah, on the brief), for appellants.

Grant H. Bagley, of Salt Lake City, Utah (P. T. Farnsworth, Jr., and W. Q. Van Cott, both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Adelina Ronzio and Walter Ronzio, as administrator of the estate of Guiseppi Ronzio, deceased,[1] brought this suit against the Denver & Rio Grande Western Railroad Company[2] in the District Court of Grand County, Utah, to quiet the title to certain water rights and to determine their priorities. In their complaint, plaintiffs alleged that Guiseppi Ronzio died March 22, 1932; that at the time of his death he and Adelina Ronzio were, and ever since August 24, 1914, had been, the owners of the right to use .33 of a cubic foot per second flow of the waters of Thompson Creek[3] from May 1 to October 1 of each year, for the irrigation of 18 acres of land particularly described in the complaint; and were, and ever since November 23, 1914, had been, the owners of the right to use .1364 of a cubic foot per second flow of the waters of Thompson Creek from April 1

---

[1] Hereinafter referred to as plaintiffs.

[2] Hereinafter referred to as the Railroad Company.

[3] Thompson Creek rises in the Book Mountains in Utah, and its entire course is in Grand County, Utah.

to October 1 of each year, for the irrigation of 3.98 acres of land particularly described in the complaint; that since the death of Guiseppi Ronzio, plaintiffs have been and now are the owners of such water rights; that since March 26, 1937, the Railroad Company, on divers and numerous occasions, had broken the diversion dam of plaintiffs and deprived them of the use of such water to their damage in the sum of $1,000; that the Railroad Company claims the right to the use of the waters of Thompson Creek; that the extent and nature of the claim of the Railroad Company are unknown to plaintiffs; that their rights are first and prior to the right of the Railroad Company, and that the latter's right, if any, is secondary, inferior, and subsequent to their rights. They prayed for damages in the sum of $1,000, and for a decree quieting their title to their alleged water rights and adjudging that the Railroad Company's right, if any, is secondary, inferior, and subsequent to their rights.

In due time the Railroad Company filed its petition for removal, notice, and bond, and the cause was duly removed to the District Court of the United States for the District of Utah. In its petition for removal, the Railroad Company alleged diversity of citizenship, and that the amount in controversy, exclusive of interest and costs, is in excess of $3,000. The Railroad Company filed an answer and cross-complaint in which it alleged that in 1883, the predecessor in interest of the Railroad Company appropriated all the water of Thompson Creek and applied such water to beneficial use by diverting the same through a pipe line to the village of Thompson, where it was used to operate the engines and trains of such predecessor and for domestic purposes by the employees of such predecessor residing at Thompson, and that ever since such appropriation, the Railroad Company and its predecessor in interest have continuously so used such water; that no other water is available at Thompson for such uses; that on numerous occasions plaintiffs had broken, destroyed, and interfered with the dams, reservoirs, and pipe lines of the Railroad Company, and diverted and carried away the water of Thompson Creek, and threatened to continue so to do; and that by reason of the breaking and destroying of such physical works, the Railroad Company had been damaged in the sum of $300. It prayed judgment against plaintiffs for $300 damages, and for a decree ad-

judging it to be the owner of the right to the continuous use of the water flowing in Thompson Creek for the operation of its engines and trains and for domestic purposes at Thompson, and that such a right is prior and superior to the rights of plaintiffs, and enjoining plaintiffs from damaging, injuring, or interfering with its physical works, and from diverting or using any of the water of Thompson Creek. Plaintiffs interposed a motion to remand on the ground that the matter in controversy, exclusive of interest and costs, does not exceed the sum of $3,000. The motion to remand was overruled. Thereafter, the Railroad Company applied for a temporary injunction. From an order granting a temporary injunction, plaintiffs have appealed.

The sole question presented is whether the matter in controversy exceeds the sum of $3,000.

It was stipulated that the value of the right to use .4664 cubic feet of water per second for agricultural purposes under plaintiffs' claimed water rights is not in excess of $2,000; that the value to the Railroad Company of the right to take and use the water claimed by the plaintiffs, for railroad purposes, under the water right claimed by the Railroad Company, is in excess of $3,000; that the value of the water right claimed by the Railroad Company is many times $3,000; and that if the Railroad Company is denied the right to use the .4664 cubic feet of water per second claimed by the plaintiffs, it will suffer a detriment or loss, exclusive of interest and costs, greatly in excess of $3,000.

■ A water right is defined in Murphy v. Kerr, D.C.N.M., 296 F. 536, 541, as follows:

"While the corpus of naturally running water belongs to the state in trust for the public, the law recognizes a property right in its flow and use, known as the usufructuary right or the water right. Wiel, in his work on Water Rights at page 304, vol. 1, 3d Ed., gives two definitions of a water right, as follows:

" 'A water right of appropriation is real estate, independent of the ditch for carrying the water, and independent of ownership or possession of any land and independent of place of use or mode of enjoyment, whereby the appropriator is granted by the government the exclusive use of the water anywhere so long as he applies it to

any beneficial purpose, and it is an incorporeal hereditament, solely usufructuary, not conferring ownership in the corpus of the water or in the channel of the stream.'

" ' "A water right is a usufruct in a stream, consisting in the right to have the water flow so that some portion of it (which portion the law limits in various ways) may be reduced to possession and be made the private property of an individual." '

"It is therefore the right to divert water from a natural stream by artificial means and apply the same to beneficial use."

It is not a particular quantity of water, but the right to take a definite amount of water from the stream and apply it to a particular beneficial use.

In the complaint three water rights are drawn in issue—the alleged rights of plaintiffs to divert certain water from Thompson Creek and apply it to beneficial use on certain lands for agricultural purposes, and the claimed right of the Railroad Company to divert certain water from Thompson Creek and use it for railroad and domestic purposes. Each water right is separate and distinct,—plaintiffs', the right to divert and use water on certain lands for agricultural purposes, and the Railroad Company's, the right to divert and use water for railroad and domestic purposes. All are involved. In this respect the instant case differs from an ordinary suit to quiet title where one specific tract of land is involved and its value is the test.

The plaintiffs allege that their water rights are prior and superior to the claimed water right of the Railroad Company and that the latter's right is subject and inferior to the rights of the plaintiffs. The complaint prays for the establishment of the plaintiffs' water rights and for a decree adjudging that the Railroad Company's right is inferior and subsequent to the plaintiffs' rights.

In Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895, the court said: "By matter in dispute is meant the subject of litigation,—the matter upon which the action is brought and issue is joined." See, also, Cowell v. City Water Supply Co., 8 Cir., 121 F. 53, 55. In determining the matter in controversy, we may look to the object sought to be accomplished by the plaintiffs' complaint;[4] the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.[5]

Here, the object of the suit is to establish the validity of plaintiffs' water rights and their priority over the water right claimed by the Railroad Company, and to deprive the Railroad Company of the right to take under its claimed water right, the .4664 cubic feet of water per second claimed by the plaintiffs under their water rights. The judgment sought, and to which the plaintiffs would be entitled if they proved the allegations of their complaint, would establish the validity of plaintiffs' water rights and their priority over the Railroad Company's claimed water right and would deprive the Railroad Company of the right to take under its water right for railroad purposes the .4664 cubic feet of water claimed by plaintiffs. Such a judgment in favor of the plaintiffs would give their rights priority, fix the Railroad Company's water right as secondary, destroy its value and result in a pecuniary

---

4 Hunt v. New York Cotton Exchange, 205 U.S. 322, 336, 27 S.Ct. 529, 51 L.Ed. 821;

Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174;

Pierce Oil Corp. v. Hopkins, 264 U.S. 137, 142, 44 S.Ct. 251, 68 L.Ed. 593;

Nord v. Griffin, 7 Cir., 86 F.2d 481, 483.

In Glenwood Light Co. v. Mutual Light Co., supra [239 U.S. 121, 36 S.Ct. 32, 60 L.Ed. 174], the court said:

"The jurisdictional amount is to be tested by the value of the object to be gained by complainant."

5 Elliott v. Empire Natural Gas Co., 8 Cir., 4 F.2d 493, 497;

Jensen v. New York Life Ins. Co., 8 Cir., 50 F.2d 512, 514;

Armstrong v. Townsend, D.C.Ind., 8 F. Supp. 953, 955;

New Jersey Federation, etc., Ass'ns v. Hoffman, D.C.Pa., 25 F.Supp. 687;

Golden v. Sixth Judicial Dist. Court, 57 Nev. 114, 58 P.2d 1042, 1044, 1045;

Cowell v. City Water Supply Co., 8 Cir., 121 F. 53, 55, 57;

Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895.

In the last cited case the court said:

"It is conceded that the pecuniary value of the matter in dispute may be determined, * * * by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment."

loss to the Railroad Company greatly in excess of $3,000.

We, therefore, conclude that the requisite jurisdictional amount was involved. The order is affirmed.

HUXMAN, Circuit Judge, concurs in the result.