OKLAHOMA RETAIL GROCERS ASSO-
CIATION, an Oklahoma Corporation,
Plaintiff-Appellant,

v.

WAL–MART STORES, INCORPORAT-
ED, a Delaware Corporation,
Defendant-Appellee.

No. 78–1076.

United States Court of Appeals,
Tenth Circuit.

Argued July 18, 1979.

Decided Aug. 21, 1979.

Grover L. Miskovsky, of Miskovsky, Sullivan & Miskovsky, Oklahoma City, Okl. (George Miskovsky, Sr., Carroll E. Gregg and John Paul Johnson, of Miskovsky, Sullivan & Miskovsky, Oklahoma City, Okl., on the brief), for plaintiff-appellant.

Charles W. Shipley, Tulsa, Okl. (James L. Kincaid and S. Robson Walton, Tulsa, Okl., on the brief), for defendant-appellee.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The principal question in this appeal is whether the trial court erred in ruling that the plaintiff-appellant, the Oklahoma Retail Grocers Association, was barred from maintaining the suit by the so-called clean hands doctrine, the relief sought having been injunctive in nature. The complaint or petition as it is called in the state court in Oklahoma was originally filed July 16, 1976, in the District Court in the State and County of Oklahoma.

## FACTS AND PROCEEDINGS

Oklahoma Retail Grocers Association is an organized trade association and also a corporation under the laws of Oklahoma and is licensed by the State of Oklahoma as a retail grocery association. The action was brought by it on behalf of its 1,237 members, all of which were engaged in the retail grocery business in Oklahoma and which members did business in a number of counties. The defendant was alleged to have been a foreign corporation with its principal business in Bentonville, Arkansas. It is allegedly in the same business as the members of the plaintiff corporation. The suit was brought under the Oklahoma Unfair Sales Act, Title 15, Sections 598.1 to 598.11, inclusive, Okl.Stat.Annot. The action sought a temporary and permanent injunction in accordance with the terms of the mentioned statute. The complaint alleged that the plaintiff and the members of the plaintiff Association were injured by the defendant as a result of its past violations and threatened future violations of the Oklahoma Unfair Sales Act. Specifically, defendant was alleged to have advertised, offered for sale and sold at retail items of merchandise at prices at less than cost to the retailer as defined by the Oklahoma Unfair Sales Act. It referred to an exhibit attached which included a number of items which were sold below cost. This was said to have been carried on for the intent and purpose of diverting trade from competitors or otherwise injuring competition or impairing and preventing fair competition. The particular complaint was that the items advertised by the defendant were sold below cost and that this directly injured the plaintiff Association and its members.

The temporary restraining order was issued by the State District Court following which the cause was removed by the defendant to the United States District Court for the Eastern District of Oklahoma. The petition for removal set forth the diversity of citizenship of the plaintiff and defendant corporation and stated also that the matter in controversy exceeded the sum or value of $10,000 exclusive of interest or costs. The plaintiff sought an order of remand to the District Court of Oklahoma County, State of Oklahoma. This was denied. Extensive discovery was had, and finally on September 19, 1977, defendant filed a motion for summary judgment pursuant to Rule 56, F.R.Civ.P. The emphasis in the motion was given to the alleged fact that various members of the Association had violated the provisions of the Act since its inception; that there was no substantial controversy as to any material fact including the equitable defense of clean hands. The cause was determined on that ground.

Summary judgment was granted by Judge Thompson based upon responses of plaintiff to defendant's requests for admissions as to numerous advertisements by the members of plaintiff Association revealing sales below cost on their part, the very activity that was the basis for the complaint herein. The court's order recited that at the pretrial conference a stipulation between the parties contained the agreement that the plaintiff Association would not move the court or any other court to grant injunctive relief against the defendant while this action was pending if the defendant would order the managers of its stores within the State of Oklahoma not to advertise its merchandise at below cost. Also stipulated was that offering to sell, or sale of merchandise at less than cost would destroy or lessen competition. The court said that the sole basis set forth in the motion for summary judgment was the issue of unclean hands. With respect to this the court said:

The plaintiff has admitted that certain of its members have violated the Act. In answers to requests for admissions filed by the defendant the plaintiff has admitted 35 separate instances of below cost advertising in 12 different towns in Oklahoma by members of the plaintiff Association during the pendency of this action.

The defendant also has admitted to below cost advertising prior to the filing of this action. However, the defendant denies a violation of the Act claiming that to violate the Act requires the showing of an intent to injure competition which it claims is not established by the mere showing of the advertisement and sale of an item below cost by a retailer. * * * The plaintiff asserts that because it is a corporation the actions of its members or shareholders are not attributable to it for purposes of the application of the clean hands doctrine.

The court concluded that summary judgment was appropriate; that it would be an injustice to allow the plaintiff, whose members are admittedly doing what it seeks to enjoin the defendant from doing, to continue to prosecute this action. The court also concluded that since there was no issue of material fact in connection with the dispositive issue, summary judgment was appropriate.

## THE QUESTION OF UNCLEAN HANDS

The remedy here, that is an injunction against price-cutting, was conceived of during the great Depression so as to stabilize the economy and provide some protection of small business, whereby it could not be ruled by cutthroat competition. At present price-cutting is not regarded as a social evil. The fact, however, that the remedy is old-fashioned is no basis for not enforcing it. If, indeed, the law is no longer useful, it should be repealed. In our view the trial court was correct in taking the stand that the Association is not entitled to injunctive relief on behalf of its members when its members are engaged in the very same activity that the defendant is guilty of and for which injunctive relief is sought. The argument of the defendant and the decision of the court was that plaintiff was in a poor position to select the defendant and prosecute it while at the time allowing its members to carry on the same activities. A court of equity looks with disfavor upon such activity. It will, in the proper case, withhold aid in accordance with the clean hands doctrine.

It is important to note that the plaintiff-appellant corporation exists only through its member businesses. The petition in this case alleges that "the plaintiff prosecutes this cause as the real party in interest for and on behalf of 1,237 members of said Association all of whom and at all times material hereto reside in the State of Oklahoma. * * *" Thus, the beneficiaries of this action are the numerous members of the Association. The effort is to prevent the defendant-appellee from engaging in competition through price cutting with the members of the trade association. However, the result of giving effect to a corporate entity here would be tantamount to saying that this representative of the violators is Simon Pure merely because of the corporate character. If the corporation had

an independent existence and independent purposes, conceivably this could be permissible. Where, however, its only claim to existence is as a representative of Association members, it would be irrational and inequitable to allow the entity to so function.

Fletcher Cyclopedia Corporations, Vol. 1, § 41, explains the circumstances under which there will be a disregard of the corporate entity. The author reports that the entity or personality of the corporation is, by some authorities, regarded as a fiction or abstraction, the real thing or being consisting of the collective or unitary body of members; others regard the entity as the fact or thing to deal with. The author contends that this lack of agreement notwithstanding, practically all authorities agree that under some circumstances the corporation is to be disregarded as an intermediate between the ultimate person or persons or corporation and the adverse party, and should be disregarded in the interest of justice in such cases as fraud, contravention of law or contract, public wrong, or to work out the equities among members of the corporation internally and involving no rights of the public or third persons. Fletcher says that there is a growing tendency, of course, to do so.

In § 41.2, Fletcher explains the purpose of disregard of corporate entity. There it is stated:

> Most of the cases announcing this rule for disregarding the corporate entity ·have been in equity or equitable in nature, the doctrine being one of equity, but there is authority that the law will follow equity in this regard, although in one view that may be questioned. An accepted statement of this doctrine is: When the corporation sues upon legal titles or rights, the distinction of entities is observed, but when it sues upon equities of the whole body of stockholders the court looks to their equities. In equity the substance of the matter is looked at, "and if the beneficiaries of the judgment sought have no standing in equity to recover, we ought not to become befogged

by the fiction of corporate individuality, and apply the principles of equity to reach an inequitable result."

One .of the cases cited by Fletcher is *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 93 N.W. 1024 (1903), a decision which was written by Dean Pound while he was a Supreme Court of Nebraska Commissioner. It referred to an article by Maurice Wormser, 12 Colum.L.Rev. 496, 513–514.

In *Home Fire Ins. Co. v. Barber, supra,* Dean Pound stated that to permit persons to recover through the medium of a court of equity that to which they are not entitled, simply because the nominal recovery is by a distinct person, even though they derive the whole, actual and substantial benefit, is a perversion of equity. It turns principles meant to do justice into rules to be administered strictly without regard to the result.

> It is contrary to the very genius of equity. When the corporation comes into equity and seeks equitable relief, we ought to look at the substance of the proceeding, and, if the beneficiaries of the judgment sought have no standing in equity to recover, we ought not to become befogged by the fiction of corporate individuality, and apply the principles of equity to reach an ·inequitable result.

> Hence, we think the rule to apply to such cases is this: Where a corporation is proceeding at law, or where it is asserting a title to property, or the title to property is involved, the corporation is regarded as a person separate and distinct from its stockholders, or any or all of them. But where it is proceeding in equity to assert rights of an equitable nature, or is seeking relief upon rules or principles of equity, the court of equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery, and if the stockholders have no standing in equity, and are not equitably entitled to the remedy sought to be enforced by the corporation in their behalf and for their advantage, the corporation will not

be permitted to recover. This rule finds many illustrations in the authorities.

93 N.W. at 1033.

All of this formula is applicable to the case at bar because here we have individual members of this Association who have been guilty of the very acts that the corporation is complaining about as against the defendant-appellee and they would have us disregard those acts of the beneficiaries of the action and look to the corporation alone. This is in clear violation of the principle which is formulated by Dean Pound in *Home Fire Ins. Co.* He cites numerous contemporaneous state court decisions which support his conclusion. Indeed the opinion is virtually an annotation. His lead citation is an early Colorado decision, *Arkansas River Land, Town & Canal Co. v. Farmers' Loan & Trust Co.,* 13 Colo. 587, 22 P. 954 (1889). The rule of this case is that a corporation may not maintain a suit seeking equitable relief without being regarded as a representative of its stockholders. The opinion continues that if the shareholders are in an inequitable position, "they cannot, through the corporate organization, or in its name, obtain relief either for themselves or for the corporation." The court further stated:

It is true that, for some purposes, a body corporate is sometimes regarded as a legal entity, or a fictitious person having a distinct existence. This fiction is not recognized in equity. The reason is clear. Without organization and members, without officers and stockholders, a corporation is but a naked body. It may be authorized to exercise corporate franchises, but is without means or instrumentalities for such exercise. It is clear, therefore, that a body corporate cannot maintain a suit for equitable relief, except as the representative of the stockholders. It necessarily follows that if the shareholders are without equity they cannot, through the corporate organization, or in its name, obtain relief either for themselves or for the corporation. * * * At the very outset of the discussion, then, it must be assumed that, in a suit of this nature, the corporation and the individual

plaintiffs cannot be separated. It follows that, if the individual plaintiffs are not entitled to relief, as counsel admits, the corporation is not, and the judgment dismissing the bill might, very properly, be affirmed without further discussion.

22 P. at 958.

Numerous other decisions are cited in *Home Fire Ins. Co.,* but there is no necessity for including those citations here.

Commissioner Pound said that there was only one contrary decision and that was *Fitzgerald v. Fitzgerald & Mallory Construction Co.,* 41 Neb. 374, 429, 59 N.W. 838. He said that it was not authoritative because rehearing was granted and the case was redecided upon an entirely different point.

### JURISDICTIONAL AMOUNT

Plaintiff-appellant has also contended throughout that there is no federal jurisdiction due to the failure of the case to establish jurisdictional amount. Quite early in the case the district court dealt with this issue in connection with the plaintiff's motion to remand the cause to the state court. It denied the remand motion and said:

The determinative issue is whether the requisite amount in controversy exists in this case. When injunctive relief is sought the interests of either party may be looked to in determining the amount in controversy. *Ronzio v. Denver & R. G. W. R. Co.,* 116 F.2d 604 (10th Cir. 1940). The cost of complying with a regulatory scheme is a proper consideration in determining the amount in controversy. *Gibbs v. Buck,* 307 U.S. 66 [59 S.Ct. 725, 83 L.Ed. 1111] (1939). The defendant has filed an affidavit of S. Robson Walton, an officer of the defendant corporation, wherein he states that it will cost the defendant corporation in excess of $10,-000.00 to comply with the order sought by the plaintiff. This affidavit is uncontroverted and the Court is convinced that there is in this case an amount in controversy in excess of $10,000.00.

The trial court was correct in recognizing that in this, an injunction case, the impact on the defendant, including the cost of the injunction, is a proper element for consideration. The case of *Ronzio v. Denver & R. G. W. R. Co.*, 116 F.2d 604 (10th Cir. 1940), is a relevant authority as is the decision of the Supreme Court in *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). Accordingly, this issue is lacking in merit.

\* \* \* \* \* \*

It is our conclusion that the trial court was correct in concluding that the corporate veil could be pierced in this injunctive effort—an extraordinary equitable remedy.

Accordingly, then, we conclude that the judgment should be and the same is hereby affirmed.