**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**Jeffrey L. LANE, John E. Taylor, II, Memtek, Inc., and Arby's, Inc., Defendants.**

**No. NA 89–166–C.**

United States District Court, S.D. Indiana, New Albany Division.

March 29, 1991.

Randolph A. Leerkamp, Kyle A. Jones, Carter & Leerkamp, Indianapolis, Ind., for plaintiff.

S. Frank Mattox, New Albany, Ind., for defendant John E. Taylor, II.

Anthony L. Warth, New Albany, Ind., for defendant Arby's, Inc.

No appearance of counsel on record, for defendant Jeffrey L. Lane.

## ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOLAND, District Judge.

This matter comes before the Court on the following pleadings and papers:

1. Plaintiff's Complaint for Declaratory Judgment, which was filed pursuant to Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1332, and § 2201,

2. Defendant Memtek's Answer of September 27, 1989,[1]

3. Defendant Taylor's Answer of October 13, 1989,

4. Plaintiff's Motion for Summary Judgment, Memorandum in Support thereof, and supporting papers,

5. Plaintiff's Request for Oral Argument,

6. Plaintiff's Subsequent Withdrawal of Request for Oral Argument and Request for Ruling, and

7. the deposition transcripts of defendants Taylor and Lane.

As noted in the plaintiff's most recent pleading, no defendant has responded to its Motion for Summary Judgment or moved for an enlargement of time to do so. Withdrawal of Request for Oral Argument and Request for Ruling, p. 2.

Whereupon the Court, having read the memorandum in support of the plaintiff's Motion for Summary Judgment, and the parties' pleadings filed in this matter, and being duly advised, hereby concludes that the plaintiff is entitled to summary judgment as a matter of law. The plaintiff's Motion for Summary Judgment is therefore GRANTED. The Court concludes that American Family Mutual Insurance Company's policy of insurance, policy number 13X07193, provides no coverage to defendant Jeffrey L. Lane as a result of his altercation with John E. Taylor on or about October 21, 1988, and further, that American Family Mutual Insurance Company has no duty to defend Jeffrey L. Lane in any action commenced against him which arises (or arose) out of his altercation with John E. Taylor on or about October 21, 1988.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

### I. Background

Defendant Jeffrey L. Lane was an employee of the Arby's Restaurant which is located in New Albany (Floyd County), Indiana. Hired by Arby's in 1988, Lane was being trained as a cook and was responsible for getting orders out. Lane Deposition, p. 5–7. According to Lane, he was told when he was hired that he had been hired in part because management wanted someone over-age working there. Lane Deposition, p. 4. The restaurant did not teach Lane how to handle unruly customers, however, because he worked behind the line. Lane Deposition, pp. 29, 49–50.

On October 21, 1988, sometime after 11:00 p.m., Lane finished his work and clocked out. Lane Deposition, pp. 9–10. Instead of leaving his place of employment soon after he finished his tasks, defendant Lane waited in the restaurant lobby for the manager to finish her duties. Lane Deposition, p. 11. While he was waiting, friends of fellow employees Scott Morris and Scott Appleby (known by Lane as "the two Scotts") came to an outside entrance to the restaurant and indicated that they wished to talk to Morris and Appleby. Lane Deposition, p. 11. Lane called for Morris and Appleby and they began talking to their friends, including John Taylor, at the door. Lane Deposition, pp. 11–12.

---

**1.** This Answer was actually filed by defendant Lancaster, who has since been dismissed from this action, and defendant L. & S., Inc., of Berne, Indiana. On January 16, 1990, however, defendant L. & S., Inc. filed its' Motion to substitute Memtek, Inc. as party defendant. It noted in its Motion that it had discovered that another Indiana corporation with the same name was senior to it (in terms of filing its papers with the Office of the Indiana Secretary of State), and that the other corporation was therefore entitled to do business under the name L. & S.. Defendant L. & S. explained that upon learning of the duplication, it had changed its corporate name to "MEMTEK, Inc.". The defendant's Motion to Substitute MEMTEK as a party defendant was granted on January 26, 1990.

According to Lane, he then became involved in a conversation with Morris and Appleby's friends (including Taylor) which eventually culminated in an argument. Lane Deposition, p. 12–13. Apparently, the argument began over Lane's admonition that Taylor could not enter the restaurant because it had closed. Lane Deposition, pp. 40–41.[2] Taylor did not attempt to force his way into the restaurant. Lane Deposition, p. 41. Instead, Taylor "dared" Lane to come outside, and Lane exited from the restaurant "of [his] own will" for what he surmised would be a fight with Taylor. Lane Deposition, p. 13. After exchanging expletives, and pushing each other at the same time, Taylor and Lane began fighting. p. 14. During the fight Taylor's nose was broken and three of his teeth were knocked out. Lane Deposition, p. 35; Taylor Deposition, pp. 21–22. Lane was later pulled from the fight by Morris and Appleby. p. 16. Lane subsequently pled guilty to battery. pp. 20–22.

On June 30, 1989, Taylor filed his Complaint in the Floyd County Circuit Court alleging, *inter alia*, that L. & S., Inc. (now Memtek) was negligent in hiring defendant Lane because at the time he was hired he was on probation (and was "serving" a one year suspended sentence) for committing felony Battery and Resisting Law Enforcement. Taylor named Lane, Terry Lancaster, who was Lane's immediate supervisor at the restaurant and who no longer has any interest in this action, L. & S., Inc., which has been replaced by Memtek, and Arby's, Inc., as defendants. Although he did not name American Family Mutual Insurance Company (the declaratory judgment plaintiff) as a defendant, the declaratory judgment plaintiff is the insurer of the Arby's restaurant described above.

On September 5, 1989, the plaintiff in this action, filed its Complaint for Declaratory Judgment with the Clerk of the United States District Court for the Southern District of Indiana urging this Court to enter a finding and declaration that:

(1) the policy of insurance, policy number 13X07193, provides no coverage to defendant, Jeffrey L. Lane, as a result of the altercation occurring on or about October 21, 1988; and that (2) there is no duty to defend Jeffrey L. Lane in any action commenced against him and arising out of the actions described in this Complaint for Declaratory Judgment.

Complaint for Declaratory Judgment, p. 5.

## II. Discussion

### A. *Jurisdiction*

█ 28 U.S.C. § 2201(a), the statute which creates the declaratory judgment action, provides in pertinent part as follows:

(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

This statute does not independently confer jurisdiction upon a federal court. *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 253–254 (7th Cir.1981), *cert. den.*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Instead, a declaratory judgment plaintiff must be able to demonstrate that the court has jurisdiction over the controversy. *Id.*

█ In the present case, the declaratory judgment plaintiff contends that this court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1), which is commonly known as the diversity statute. As recently amended, this statute provides that "the district courts shall have original jurisdiction over all civil actions" where the amount in controversy exceeds $50,000, and the action is between citizens of different states. *Id.*

---

**2.** Taylor's version of the events of the evening in question is, not unexpectedly, quite different. Taylor contends that Lane started the argument, that Lane told him that he (Taylor) was crazy, and that Lane initiated the fight. Taylor Deposition, pp. 9–14. Taylor denies daring Lane to "come outside". Taylor Deposition, p. 15.

In order to determine whether the amount in controversy requirement has been met in a declaratory judgment action the following test is applied:

> In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). Dismissal is appropriate only if it appears to a "legal certainty" that the jurisdictional amount is not met. *See id.* at 346–48, 97 S.Ct. at 2443–44. To determine the amount in controversy, we look to the pecuniary effect an adverse determination will have on either party to the lawsuit. *Oklahoma Retail Grocers Association v. Wal–Mart Stores, Inc.*, 605 F.2d 1155 (10th Cir.1979); *Ronzio v. Denver & Rio Grande Western Railroad Co.*, 116 F.2d 604, 606 (10th Cir. 1940).

*City of Moore v. Atchison, Topeka, & Santa Fe Railway Company*, 699 F.2d 507, 509 (10th Cir.1983).

Inasmuch as the declaratory judgment plaintiff is a citizen of the State of Wisconsin, and each of the defendants are citizens of the State of Indiana, there is no question that this action is between citizens of different states. With respect to the amount in controversy requirement, the declaratory judgment plaintiff alleges that the same exceeds $50,000 in this action. The Court has reviewed the parties' pleadings and the declaratory judgment plaintiff's allegations with respect to the amount in controversy and concludes that it has jurisdiction under the diversity jurisdiction statute.

## B. *Declaratory Relief*

This cause is before the Court on the plaintiff's motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part that summary judgment shall be granted forthwith if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this standard, "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).[3] In determining whether a genuine issue of material fact exists, the trial court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir.1989). At the summary judgment stage, the trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

"A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989) (*quoting Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511). In other words, summary judgment may be granted if the evidence favoring the nonmoving party "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted). Furthermore,

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson*, 477 U.S. at 256–257, 106 S.Ct. at 2514. Thus, the summary judgment in-

---

**3.** While defendants Lane and Taylor's depositions contain different versions of what occurred on or about October 21, 1989, particularly in how the fight between Lane and Taylor started, the source of their disagreement does not alter the Court's analysis as their disagreement does not concern a material issue of fact. *Id.*

quiry addresses "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. In making this inquiry, the trial court "should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none...." *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir.1987), *cert. den. sub nom.*, 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (*quoting Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972)).

The plaintiff seeks declaratory relief on three (3) independent grounds. It alleges that it owes no coverage for damages resulting from the conduct of defendant Lane and has no duty to defend him because (1) defendant Lane does not constitute an insured under the insurance policy at issue, (2) the altercation did not constitute an "occurrence" under the policy because it was not an "accident", and (3) the altercation is excluded from coverage since it was not intended from defendant Lane's standpoint. Memorandum in Support of Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's Memorandum"), pp. 4–12. The Court need only reach the plaintiff's first argument in order to conclude that it is entitled to the relief it seeks. Although the plaintiff has moved for summary judgment in accordance with the Federal Rules of Civil Procedure and the applicable local rule, the defendants have not responded to the plaintiff's Motion.

In *Auto–Owners (Mutual) Insurance Company v. L.P. Cavett Company*, 882 F.2d 1111, 1113 (7th Cir.1989), the Seventh Circuit discussed the general principles which govern the interpretation of insurance contracts:

It is axiomatic that contracts for insurance are subject to the same rules of construction and interpretation as are other contracts. A court determining liability coverage may not rewrite an insurance contract by using special rules of construction, cannot ignore the contract's plain language, and cannot rewrite them to suit the circumstances of a particular case.

Unless the policy language is ambiguous, [the court] must give the words their ordinary meaning to determine the intent of the parties. A policy is not ambiguous merely because the parties advance competing and conflicting interpretations of the specific language. An insurance provision is ambiguous only if reasonably intelligent people would differ as to the meaning of the provision without reference to outside influences.

*Id.* (Citations omitted; applying Indiana law).

An insurance company's liability under a contract of insurance is not unlimited. As a matter of course, insurers include language in their contracts of insurance which is intended to limit their liability to certain named or described entities and/or to certain very specific situations. This is precisely what occurred in the present case. The plaintiff, an insurer, entered into a contract of insurance with L. & S., Inc. (now Memtek) in early 1988. The terms of the parties' insurance contract include a description of who (and what) constitutes "an insured" under the contract. The issue in the present case, in general terms, is whether the plaintiff is liable for the acts of defendant Lane, an Arby's employee, which occurred on October 21, 1988. Resolution of this issue requires careful attention to the language used in the contract of insurance. As a federal court sitting in diversity, this Court applies state law (the law of the State of Indiana) in resolving this substantive issue. *La Salle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987).

The parties' contract of insurance (policy number 13X07193) provided, in pertinent part, as follows:

SECTION II—BUSINESS LIABILITY AND MEDICAL PAYMENTS INSURANCE

....

WHO IS AN INSURED

....

2. Each of the following is also an insured:

....

a. *your employees*, other than your executive officers, *but only for acts within the scope of their employment by you* ...

Business Owners Package Policy, pp. 9, 12 (Exhibit B, attached to the Plaintiff's Complaint; emphasis added).

The question of whether Lane was acting "within the scope of his employment" at the time of his altercation with Taylor, which would mean that he is "an insured" under the policy, is easily answered. The phrase "scope of employment" has a well-settled meaning in Indiana. As the Indiana Supreme Court explained in *Stropes v. Heritage House Childrens Center, Inc.*, 547 N.E.2d 244, 247 (Ind.1989), an employee must be "in the service of his employer" in order to be acting within the scope of his employment. An employer will not be responsible for his employee's acts if they were on the employee's own initiative "with no intention to perform [them] as part of or incident to the service for which he is employed". *Id.* (*quoting Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind.App.1984). Lane's act of exiting from the restaurant and fighting with Taylor clearly were not performed as a part of his duties or in the service of his employer. Significantly, the fact that the altercation occurred shortly after Lane completed his work-related assignments, that it was precipitated by Lane's admonition to Taylor that he could not enter the restaurant after hours, and that it occurred near if not on Arby's property, does not lead to the conclusion that the act which led to Taylor's injuries (the fight itself) was performed in the scope of Lane's employment. To the contrary, when Lane exited from the restaurant his reason for doing so was wholly unrelated to his employer's business or the job he was hired (or expected) to do at the restaurant. Whether he exited the restaurant in order to start a fight, as Taylor testified in his deposition, or simply to respond to Taylor's invitation to fight, the fact remains that he left the building to fight—not to expel Taylor, as counsel implicitly suggest-

ed during Lane's deposition, or to protect his employer's business premises. Lane admitted that engaging in a physical altercation was not part of his duties. Lane Deposition, p. 49. To require the plaintiff to defend Lane, or to ultimately be responsible for damages occasioned by Lane's actions, would expand the plaintiff's liability under the insurance contract at issue well beyond the parties' (the plaintiff and Memtek's) intent at the time they entered into the same.

## CONCLUSION

For the foregoing reasons, the Court concludes that the declaratory judgment plaintiff's Motion for Summary Judgment should be GRANTED.