**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Robert T. CONWAY, Defendant.**

**No. NA 91–31–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

Sept. 30, 1991.

J. Anthony Goebel, Wyatt, Tarrant & Combs, Louisville, Ky., for plaintiff.

Ronald Hillerich, Louisville, Ky., for defendant.

### MEMORANDUM ENTRY

NOLAND, District Judge.

#### I. *Background*

The facts in this declaratory judgment action are not in dispute. On January 19, 1991, at approximately 9:25 a.m., declarato-

---

ry judgment defendant Robert T. Conway, a resident of New Albany (Floyd County), Indiana, was driving his 1984 Ford Tempo on the Interstate 64 Bridge.[1] *Complaint for Declaratory Judgment*, p. 1–2, ¶¶ 1, 3, 6; *Answer*, p. 1. While the defendant was still in Kentucky (i.e., just south of the Indiana state line), his 1984 Ford Tempo stalled. *Complaint for Declaratory Judgment*, p. 2, ¶ 2; *Answer*, p. 1. The defendant exited from his automobile, to either push or attempt to repair it, only to be seriously injured when his automobile was rear-ended by an automobile which was operated by Jill Lantz. *Complaint for Declaratory Judgment*, p. 2, ¶ 8; *Answer*, p. 1. The defendant was the only individual injured and thus is the only individual with a claim for personal injuries against Lantz. Lantz, who was herself an Indiana resident, had an automobile liability insurance policy with limits of liability coverage of $50,000 per person and $100,000 per accident. *Id.*

The declaratory judgment plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), is an Illinois corporation. *Complaint for Declaratory Judgment*, p. 1, ¶ 2; *Answer*, p. 1, ¶ 1. Although its principal place of business is in Illinois, State Farm is also "duly qualified to do and transact business in the State of Indiana." *Id.* It also "did business" in the Commonwealth of Kentucky. *Complaint for Declaratory Judgment*, p. 4, ¶ 15; *Answer*, p. 1.

Prior to the date of the accident, the defendant had been issued an automobile insurance policy on his 1984 Ford Tempo (Policy No. 555–2458–B31–14B). *Complaint for Declaratory Judgment*, pp. 2–3, ¶¶ 9–10; *Answer*, p. 1. It limited liability coverage for bodily injury to $50,000 and $100,000 per accident, $10,000 for medical payments per person, and $50,000 and $100,000 per accident for *under* insured motor vehicles. *Complaint for Declaratory Judgment*, p. 3, ¶ 10; *Answer*, p. 1; *see* Exhibit A (Declarations page) to Plaintiff's Complaint. The defendant also had an insurance policy with identical liability limits

in effect on his 1982 Chevrolet Camaro (Policy No. 584–3205–C01–14D). *Complaint for Declaratory Judgment*, p. 3, ¶ 11–12; *Answer*, p. 1; *see* Exhibit B (Declarations page) to *Plaintiff's Complaint.*

The defendant, a resident of New Albany, Indiana at the time, had applied for the aforementioned insurance policies at the New Albany, Indiana office of State Farm Sales Agent Robert L. Bitner. *Affidavit of Robert L. Bitner* (hereinafter "*Bitner Affidavit*"), ¶¶ 4, 7. Any and all negotiations regarding the policies were conducted in the State of Indiana. *Id.*, ¶ 5. After the applications and premiums for the policies were sent to State Farm's West Lafayette, Indiana regional office, the policies were issued to Bitner's New Albany, Indiana office where they were reviewed for accuracy and then sent to the defendant's home address in New Albany, Indiana. *Id.*, ¶ 6.

The defendant's insurance policies included a number of different coverages. Coverage "W," the underinsured motor vehicle coverage, was defined within the defendant's policies as applying "[w]hen the other car or driver is underinsured." Exhibit A to *Plaintiff's Complaint*, p. 3; Exhibit B to *Plaintiff's Complaint*, p. 3. Both policies also contained the following underinsured motor vehicle provisions:

**Underinsured Motor Vehicle—Coverage W**

**Underinsured Motor Vehicle—means a land motor vehicle:**

1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident, and

2. whose limits of liability for bodily injury liability:

   a. are less than the limits you carry for underinsured motor vehicle coverage under this policy, or

   b. have been reduced by payments to **persons** other than the **insured** to less than the limits **you** carry for underinsured motor vehicle coverage under this policy.

. . . .

---

**1.** The Interstate 64 Bridge is also known as the Sherman Minton Memorial Bridge.

**Limits of Liability—Coverage W**

4. The most we pay any one **insured** is the lesser of:

a. the difference between the 'each person' limit of this coverage and the amount paid to the **insured** by or for any **person** or organization who is or may be held legally liable for the **bodily injury**; or

b. the difference between the amount of the **insured's** damages for **bodily injury** and the amount paid to the **insured** by or for any person or organization who is or may be held legally liable for the **bodily injury**.

Subject to 4.a. and 4.b. above, the maximum amount payable to all **insureds** under this coverage is the difference between the 'each accident' limit of liability of this coverage and the amount paid by all **insureds** by or for any **person** or organization who is or may be held legally liable for the **bodily injury**.

Exhibit A to *Plaintiff's Complaint,* pp. 11, 13; Exhibit B to *Plaintiff's Complaint,* pp. 11, 13 (Emphasis original). Additionally, both policies contained the following provisions prohibiting stacking:

**If There is Other Coverage—Coverage W**

1. If the **insured** sustains **bodily injury** as a pedestrian and other underinsured motor vehicle coverage applies:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability.

Exhibit A to *Plaintiff's Complaint,* p. 15; Exhibit B to *Plaintiff's Complaint,* p. 15 (Emphasis original).

Since the date of his accident, the declaratory judgment plaintiff (State Farm) has paid the defendant a total of $10,000 in basic reparation benefits (the maximum amount under the Kentucky Motor Vehicle Reparations Act, *see* Kentucky Revised Statute 304.39–50(3)). *Complaint for Declaratory Judgment,* pp. 3–4, ¶¶ 13–15; *Answer,* p. 1. Plaintiff State Farm has been informed by the defendant's counsel, however, that the defendant is making a claim under both of his State Farm policies

(i.e., both the Ford *and Chevrolet* policies) and that he will maintain that he has the right to stack the limits of his coverage under the policies. *Complaint for Declaratory Judgment,* pp. 4–5, ¶ 16; *Answer,* p. 1.

On March 6, 1991, plaintiff State Farm filed its Complaint for Declaratory Judgment. It seeks a declaration of the following:

A. That Indiana law governs this controversy;

B. That State Farm Insurance does not owe underinsured motor vehicle benefits under the Ford policy;

C. That State Farm Insurance does not owe underinsured motor vehicle benefits under the Chevrolet policy;

D. That the coverages under the Ford and Chevrolet policies may not be stacked; and

E. That the Court award such further relief that may be proper in the premises.

*Complaint for Declaratory Judgment,* p. 7.

## II. *Discussion*

### A. Jurisdiction

28 U.S.C. § 2201(a), the statute which creates the declaratory judgment action, provides in pertinent part as follows:

(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

This statute does not independently confer jurisdiction upon a federal court. *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 253–254 (7th Cir.1981), *cert. den.,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Instead, a declaratory judgment plaintiff must be able to demonstrate that the court has jurisdiction over the controversy. *Id.*

In the present case, the declaratory judgment plaintiff contends that this court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1), which is commonly known as the diversity jurisdiction statute. As recently amended, this statute provides that "the district courts shall have original jurisdiction over all civil actions" where the amount in controversy exceeds $50,000, and the action is between citizens of different states. *Id.*

In order to determine whether the amount in controversy requirement has been met in a declaratory judgment action the following test is applied:

> In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). Dismissal is appropriate only if it appears to a "legal certainty" that the jurisdictional amount is not met. *See id.* at 346–48, 97 S.Ct. at 2443–44. To determine the amount in controversy, we look to the pecuniary effect an adverse determination will have on either party to the lawsuit. *Oklahoma Retail Grocers Association v. Wal–Mart Stores, Inc.*, 605 F.2d 1155 (10th Cir.1979); *Ronzio v. Denver & Rio Grande Western Railroad Co.*, 116 F.2d 604, 606 (10th Cir. 1940).

*City of Moore v. Atchison, Topeka, & Santa Fe Railway Company*, 699 F.2d 507, 509 (10th Cir.1983).

Inasmuch as the declaratory judgment plaintiff is a citizen of the State of Illinois, and the defendant is a citizen of the State of Indiana, there is no question that this action is between citizens of different states. With respect to the amount in controversy requirement, the declaratory judgment plaintiff alleges that the same exceeds $50,000 in this action. *Complaint for Declaratory Judgment*, p. 2, ¶ 4. The Court has reviewed the parties' pleadings and the declaratory judgment plaintiff's allegation with respect to the amount in controversy and concludes that it has jurisdiction under the diversity jurisdiction statute.

## B. Declaratory Relief

This cause is before the Court on the plaintiff's Motion for Summary Judgment. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part that summary judgment shall be granted forthwith if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this standard, "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). In determining whether a genuine issue of material fact exists, the trial court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir.1989). At the summary judgment stage, the trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

"A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989) (*quoting Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511). In other words, summary judgment may be granted if the evidence favoring the nonmoving party "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted). Furthermore,

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. . . . [T]he plaintiff must present affirmative evidence in order to defeat a

properly supported motion for summary judgment.

*Anderson,* 477 U.S. at 256–257, 106 S.Ct. at 2514. Thus, the summary judgment inquiry addresses "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. In making this inquiry, the trial court "should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none...." *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987), *cert. den. sub nom.,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (*quoting Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972)).

■ The Court must first address the issue of choice of law. As a federal court sitting in diversity, this Court must of course apply the choice-of-law rules of the forum state (Indiana) in determining which state's substantive law applies. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Indiana, the applicable choice-of-law rule is the most intimate contacts rule. *State Auto Mutual Insurance Company v. Spray,* 547 F.2d 397, 400 (7th Cir.1977); *see also W.H. Barber Company v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 423–424 (1945). Simply put, the Indiana courts apply the law of "the forum with the most intimate contacts to the facts." *Stillwell v. Brock Brothers, Inc.,* 736 F.Supp. 201, 204 (S.D.Ind.1990) (*citing Dohm & Nelke v. Wilson Foods Corp.,* 531 N.E.2d 512, 513 (Ind.App.1988)). When, as here, a court is called upon to interpret an insurance contract, it will consider:

the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the place of business of the parties to determine which state has the most significant contacts.

*Stillwell v. Brock Brothers, Inc.,* 736 F.Supp. at 205 (Citations omitted); *see also Eby v. York–Division, Borg–Warner,* 455 N.E.2d 623, 626 (Ind.App.1983). The defendant's suggestion that the Court must apply the doctrine of *lex loci delicti* (the law of the place where the wrong occurred) because this "is also a case involving a tort," *Defendant's Response to Plaintiff's Motion for Summary Judgment,* p. 3, is without merit. As the *Stillwell* Court explained, when a district court is presented with a motion for summary judgment which focuses exclusively upon the issue of coverage under an insurance policy, "[its] analysis is controlled by the place of contracting, *not* the place of the alleged tort." *Id.,* 736 F.Supp. at 205, n. 5 (Emphasis added). As even a cursory review of the foregoing facts demonstrates, Indiana clearly has the most intimate contacts to the facts in this case. The insurance contracts at issue in this case were entered into in Indiana (the applications were completed in New Albany, Indiana and the premiums were paid in the State as well). The actual policies were issued in Indiana and were mailed to the defendant's Indiana residence by one of the plaintiff's Indiana sales agents. The accident itself involved two (2) Indiana residents. The *only* contact occurring outside of the State of Indiana was the place of the accident (i.e., the fact that the accident occurred on the Kentucky side of the Sherman Minton Bridge). The Court concludes that Indiana law applies in this case.

■ In *Auto–Owners (Mutual) Insurance Company v. L.P. Cavett Company,* 882 F.2d 1111, 1113 (7th Cir.1989), the Seventh Circuit discussed the general principles which govern the interpretation of insurance contracts:

It is axiomatic that contracts for insurance are subject to the same rules of construction and interpretation as are other contracts. A court determining liability coverage may not rewrite an insurance contract by using special rules of construction, cannot ignore the contract's plain language, and cannot rewrite them to suit the circumstances of a particular case.

Unless the policy language is ambiguous, [the court] must give the words their ordinary meaning to determine the

intent of the parties. A policy is not ambiguous merely because the parties advance competing and conflicting interpretations of the specific language. An insurance provision is ambiguous only if reasonably intelligent people would differ as to the meaning of the provision without reference to outside influences. *Id.* (Citations omitted; applying Indiana law).

At this juncture, two (2) substantive issues must be resolved by the Court. First, the Court must determine whether the policies which are at issue provide underinsured motor vehicle coverage to the defendant. Second, the Court must determine whether the policies may be stacked. Both questions must be answered in the negative.

The issue of coverage is easily resolved. While the policies which are at issue in this case provided the defendant with underinsured motor vehicle coverage, the coverage was not unlimited. Consistent with the Indiana statute which defines the term "underinsured motor vehicle," *see* Indiana Code § 27–7–5–4(b) (1988), both policies deny coverage to the defendant because the limits of liability for bodily injury liability for Lantz's automobile were *not* less than the limits for the defendant's underinsured motor vehicle coverage (i.e., Lantz's automobile was not an "underinsured motor vehicle" as that term is defined in the defendant's policies). Additionally, Lantz's automobile was not an "underinsured motor vehicle" as defined in the second portion of "Coverage W." Because the defendant was the only occupant of his 1984 Ford Tempo at the time of the accident, payments to him under Lantz's policy will not be "reduced by payments to persons *other than the insured* to less than the limits" in his Ford or Chevrolet policies.

The issue of whether the defendant is entitled to stack the coverages under his two (2) State Farm policies is also resolved by resort to the language which was used in the policies. In Indiana, as noted by the declaratory judgment plaintiff, an insurer is permitted to include an anti-stacking provision in its insurance policies. *See* Indiana Code § 27–7–5–5(a); *High v. United Farm Bureau Mutual Insurance Company*, 533 N.E.2d 1275, 1276–1278 (Ind.App.1989). As noted above, each of the policies which were issued to the defendant included such a provision. Accordingly, the Court concludes that the defendant is not entitled to stack the coverages under his policies.

As this Court recently explained in another declaratory judgment action, an insurance company's liability under a contract of insurance is not unlimited. *American Family Mutual Insurance Company v. Lane*, 782 F.Supp. 415, 419 (S.D.Ind. 1991). Insurers typically include language in their contracts of insurance which is intended to limit their liability to certain named or described entities and/or to certain very specific situations. *Id.* This is precisely what occurred in the present case.

## CONCLUSION

For the foregoing reasons, the Court concludes that the declaratory judgment plaintiff's Motion for Summary Judgment should be GRANTED.