**NORTHERN SHIPPING COMPANY**

v.

**ARKWRIGHT BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY and Mutual Marine Office, Inc.**

Civ. A. No. 84–2349.

United States District Court,
E.D. Pennsylvania.

Jan. 14, 1985.

Michael Plevyak, West Chester, Pa., for plaintiff.

John F. Biezup, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

In this declaratory judgment action, the court is asked to resolve disputes concerning the interpretation of an insurance policy issued to the plaintiff stevedoring firm, and covering "stevedore liability".

The insured plaintiff conducts stevedoring operations at various locations in Philadelphia, Pennsylvania, Camden, New Jer-

sey, and Wilmington, Delaware. During 1978, pursuant to a contract with Compania Sud Americana de Vapores (hereinafter "the steamship company"), plaintiff undertook to perform stevedoring services, *viz.*, the discharge and service of vessels of the steamship company which were bringing fruit to this area during the 1978 Chilean fruit season. In all, plaintiff discharged cargo from these vessels on 23 separate occasions during 1978.

Subsequently, the various shippers or other persons interested in the cargo made numerous claims against the steamship company for loss or damage. Approximately 95 lawsuits were filed in state courts in New York, on behalf of various shippers, and against the steamship company. All of these actions were consolidated, and eventually removed to federal court in New York. The total claims asserted against the steamship company came to more than $1 million. The steamship company impleaded plaintiff as a third-party defendant in that action, in September 1979. Apparently, the shipping company has settled all of these claims for a total of about $365,000, and is pressing its claim against plaintiff for that amount.

Everyone agrees that the claims being asserted against plaintiff in the New York action relate to stevedoring activities as defined in the policy issued by the defendant.[1] The problem arises from the fact that the defendant's liability is limited to $250,000 "in any one occurrence or any series of occurrences directly or indirectly resulting from the same cause," and the policy provides for a deductible of $10,000 applicable to "each accident or occurrence hereunder". Plaintiff contends that the claims in question constitute a single "occurrence" for purposes of the deductible, since they all stem from stevedoring services performed pursuant to a single contract, that covering the "1978 Chilean fruit season". The defendant, on the other hand, contends that each of the 95 claims consti-

---

1. There are actually two policies, each covering a portion of the time period involved. Since the pertinent language of the policies is identical, it is unnecessary to distinguish between the two policies; references in this Opinion to "the policy" apply equally to both policies.

tutes a separate occurrence, to which separate $10,000 deductibles should be applied.

A second area of dispute concerns the defendant's obligation to defend the New York action, or to reimburse plaintiff its costs in defending the action. There is also a dispute concerning the proper allocation of legal costs in connection with a separate lawsuit brought by plaintiff against the City of Wilmington, Delaware, seeking indemnity (pursuant to a contract) for any amounts plaintiff is required to pay in the New York action stemming from its stevedoring activities in Wilmington.

## I. LIABILITY TO PAY CLAIMS

The pertinent policy language is as follows:

"3A. ...

"This insurance also covers the legal liability of the Assured as stevedores (whether arising from negligence or otherwise) in respect of loss or damage which may occur to vessels which the assured may be loading and/or discharging ... and/or their apparel or equipment, their freight and cargoes and other interests on board ... resulting from or growing out of such loading and/or discharging and to pay all claims and charges in connection therewith...."

"8. This insurance includes all legal expenses and costs incurred in defending and/or investigating claims coming within the scope of this cover where such defense and/or investigation is made with the approval of the underwriters, subject at all times to the limit of liability expressed herein.

"9. It is hereby understood and agreed that this company shall not be liable for more than the following amounts (including legal expenses) in any one occurrence or any series of occurrences directly or indirectly resulting from the same cause, each pier separately insured.

"A. $250,000 if resulting from or arising out of the assured's operations, work and duties as stevedores;

"10. It is hereby understood and agreed that the definition of 'occurrence' is to read:

'one happening or series of happenings arising out of one event taking place during the term of the policy.'

"11. In all cases of claims or series of claims hereunder, no claim shall be paid unless it exceeds the sum of $10,000 (including legal expenses) and from each accident or occurrence hereunder the amount of $10,000 shall be deducted after deductions of all salvage and recovers."

■ Plaintiff argues that the policy is ambiguous, and that ambiguities must be resolved against the defendant company. I readily agree that, to the extent the policy is actually ambiguous, the ambiguities should be resolved in favor of the assured and against the company; the difficulty is that an interpretation which seems to favor the assured in one set of circumstances would favor the company in other circumstances. That is, while treating each of the 95 claims as a separate occurrence would prejudice the assured by multiplying its deductible, it would advantage the assured by increasing the total amount of coverage provided.

Apparently, plaintiff would like a ruling that each claim is a separate occurrence for purposes of applying the $250,000 policy limit, but not for purposes of applying the $10,000 deductible. I reject that approach. Both the deductible provisions and the policy limits provisions use the word "occurrence," and the policy contains a single definition of that term, obviously intended to apply to that term wherever it appears in the policy.

It must be admitted that the definition of "occurrence", set forth in ¶ 10 of the policy, does not add appreciably to our understanding of its meaning ("one happening or series of happenings arising out of one event taking place during the term of the policy"). Webster's Third New International Dictionary defines "event" as "something that happens," and defines "happen-

ing" as "occurrence". It is, however, reasonable to suppose that the "arising out of" language of ¶ 10 of the policy was intended to dovetail with the "resulting from the same cause" language of ¶ 9. The most reasonable construction of the entire policy, in my view, is that all damage (for which plaintiff might be legally liable) caused by the same act or omission which gave rise to legal liability, is the unit to which both the $250,000 maximum and the $10,000 deductible apply.

Thus, where an identifiable negligent act or omission on the part of the stevedore causes damage, the total liability of the insurer under this policy (including legal expenses) is limited to $250,000, and arises only with respect to damages in excess of $10,000.

In many, perhaps most, instances, a particular act or omission constituting negligence can be identified as the cause of the damage to the cargo. Where that is not feasible (*e.g.*, unexplained loss or shrinkage occurring during unloading operations), it would be reasonable to regard the unloading of a particular vessel at a particular pier as the single "event" or "occurrence" for purposes of the limitations and deductible provisions of the policy.

In short, I have concluded that the claims presented in the New York litigation involve at least 23 separate units to which the limitations and deductibles provisions of the policy apply; and, depending upon the circumstances of each claim, as discussed above, perhaps as many as 95. Identifiably separate claims which, together with allocable legal expense, aggregate less than $10,000, are the responsibility of the plaintiff, not the defendants.

█ This does not mean, as defendants' argument seems to assume, that because the total number of "occurrences," multiplied by $10,000, exceeds the total sum for which recovery is now being sought against plaintiff, the defendants have no responsibility for payment. Many of the individual claims are for amounts greatly in excess of $10,000. The fact that all of these claims have been consolidated in a single third-party complaint in the New York litigation has no bearing upon the correct application of the policy provisions.

Although I am satisfied that the policy language quoted above, standing alone, rules out plaintiff's suggestion that all stevedoring services performed pursuant to any one contract constitute a single event or occurrence, and supports the construction set forth above, I note that further support for the construction I have adopted resides in the provisions of ¶ 20 of the policy, relating to scrap iron cargoes. The policy provides:

> "20. As respects scrap iron cargoes, loaded or discharged by use of electric magnets, the following conditions shall apply:
>
> "A. . . . .
>
> "B. No claim shall be payable under this policy unless the aggregate liability of the Assured arising out of the loading and/or unloading of an individual vessel (on the arrival) exceeds the sum of $10,000 and this sum shall be deducted from the amount of such claim."

This provision does not, of course, directly apply in the present case, which involves the unloading of fruit from different vessels on 23 separate occasions. But this provision does tend to show at least two things pertinent to this litigation: (1) the parties did not regard any contract for longterm stevedoring services as a single event or occurrence; and (2) the parties recognized that, where discrete acts causing damage might be difficult to identify, the entire unloading of a single vessel would be the appropriate unit of measurement.

## II. LEGAL EXPENSE

Determining the insurance company's responsibility for the expenses associated with defending the New York action is less clearcut. As the defendants correctly note, the policy does not require the company to defend actions brought against the assured. On the other hand, the policy does require the company to indemnify the as-

sured for "all legal expenses and costs incurred in defending and/or investigating claims ... where such defenses and/or investigation is made with the approval of the underwriters ....." And, while it is clear that the $250,000–per-occurrence limitation applies to the aggregate of damages and legal expenses, the policy provisions are somewhat less precise concerning the relationship between the $10,000–per-occurrence deductible and legal expenses.

Paragraph 8 of the policy states that the insurance "includes *all* legal expenses and costs ...," subject (only) to the $250,000 per-occurrence policy limit. On the other hand, ¶ 11 states that "no claim shall be paid unless it exceeds the sum of $10,000 (including legal expenses)" and that "from each accident or occurrence hereunder the amount of $10,000 shall be deducted...."

■ At first blush, it would seem that the policy is ambiguous on this point, and that the ambiguity should be resolved against the insurance company. Policy language is ambiguous when it can reasonably be construed in either of two conflicting ways. *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479 (3d Cir.1981). On the other hand, a reasonably clear, specific, policy provision should not be ignored merely because it arguably conflicts with one of two reasonable interpretations of other, more general, provisions of the policy. Upon close examination, I believe that is the situation presented here.

■ The difficulty arises from the policy's lack of precision in employing the terms "claim" and "liability". In some parts of the policy, "claim" obviously means a claim asserted by third parties against the assured (for example, the reference in paragraph 8 to "legal expenses and costs incurred in defending ... *claims* coming within the scope of this cover ..."), but the references to "claim" in ¶ 11 can reasonably be interpreted only as referring

to claims made by the assured against the insurance company (only a claim by the assured against the company could include legal expenses).

I therefore conclude that, with respect to any one "occurrence" (as discussed in the preceding section—*i.e.*, the unit to which the $250,000 maximum coverage applies) the defendant's obligation to pay the costs of investigation and/or defense arises only when, and to the extent that, such costs, when added to the amount of plaintiff's liability to the third party, exceeds $10,000; and that, as to each such "occurrence," the defendant's maximum liability, including defense costs, may not exceed $250,000.

It should be noted, not only would the interpretation sought by plaintiff do violence to the plain meaning of ¶ 11 of the policy, it would also lead to strange results, as a practical matter. When an occurrence results in damages of less than $10,000, the plaintiff has the greater interest in defense and settlement decisions, and should be permitted to exercise unfettered control over such matters. It would be most unreasonable to suppose that the parties contemplated that the insurer's right to approve or disapprove defense expenditures would arise unless the damages were sufficiently large to suggest that the insurer might be called upon to make payment.

It must be conceded, however, that the correct application of the policy provisions to the unusual situation presented by the New York litigation is difficult. At least 23, and perhaps as many as 95, claims against plaintiff arising from as many separate "occurrences" have been joined in a single federal lawsuit.[2] Many of these individual claims never posed any threat that total liability, including counsel fees, would reach the $10,000 threshold. As to them, the costs of investigation and litigation are the responsibility of plaintiff. On the other hand, many of the individual claims greatly

---

**2.** Precisely how this consolidation occurred is not disclosed in the present record. For present purposes, however, the consolidation into a single federal lawsuit must be accepted as an accomplished fact. Whether the jurisdiction of the federal court in New York might be subject to challenge (particularly if, as seems probable, it was predicated upon diversity of citizenship), is not an appropriate subject of this court's inquiry.

exceeded the $10,000 threshold, and it is clear that the insurer does bear a substantial responsibility for defense costs, as well as indemnity, with respect to these claims.

Although it seems clear that an appropriate allocation of the litigation expenses among the various claims involved in the litigation will be necessary, the present record does not afford a basis for such allocation by this court. All that can be decided at this juncture is that the insurer does have responsibility for the cost of investigating claims and the allocable portion of litigation expenses attributable to such claims, when the aggregate of claims and expenses exceeds $10,000, up to a maximum of $250,000.

## III. COUNSEL FEES AND EXPENSES OF THIS ACTION

■■■ When an insurance company wrongfully refuses to provide a defense to its insured, and the latter successfully prosecutes a declaratory judgment action resolving the issue, the insurance company may (and perhaps must) be required to pay the insured's counsel fees and expenses in the declaratory judgment litigation. *Montgomery Ward & Co., Inc. v. Pacific Indemnity Co.*, 557 F.2d 51 (3d Cir.1977); *Kelmo Enterprises v. Commercial Union Ins. Co.*, 285 Pa.Super. 13, 426 A.2d 680 (1981). In the present case, plaintiff has not succeeded in establishing that the defendants owed a duty of providing a defense, but merely that the defendants have the obligation of reimbursing plaintiff for some portion of its litigation expenses, not yet determinable. Moreover, on the coverage, deductible, and limitations issues, the result in this case is more favorable to the defendants than to the plaintiff. In these circumstances, an award of counsel fees and expenses would be inappropriate.

As noted earlier, plaintiff is also pursuing an action for contractual indemnity against the City of Wilmington. The merits of that claim are not before me, but plaintiff seeks a present ruling as to counsel fees and expenses incurred in that suit. In my view, that litigation is not within the

policy coverage of defense costs, but is governed by ordinary principles of subrogation. To the extent the result may benefit the insurer, an appropriate deduction for counsel fees would be in order; but no present obligation of the defendants has been established.

## ORDER

AND NOW, this 14th day of January, 1985, upon consideration of the motion of plaintiff, Northern Shipping Company, for partial summary judgment, the response thereto, and after hearing thereon, it is

ORDERED, ADJUDGED AND DECLARED, that:

1. Under the terms of the insurance policies in suit, all losses sustained as a result of the same act or omission constituting negligence constitute a single occurrence, happening, or event, for purposes of applying the $250,000 coverage limitation and the $10,000 deductible. Where it is not feasible to identify a single operative cause of the loss or losses, the operation of unloading a particular vessel at a particular pier should be treated as constituting a single occurrence, happening, or event, for those purposes.

2. Under the terms of the insurance policies in suit, the insurer's obligation to pay legal expenses and costs of investigating and/or defense of claims asserted against the assured arises only when, and to the extent that, the aggregate of such claims and associated investigative/defense expenses exceeds $10,000 and does not exceed $250,000.

3. Where more than one claim, arising from separate occurrences, are asserted against the assured in a single lawsuit, and not all of such individual claims reach the $10,000 threshold, the insurer's obligation to pay investigative/defense expenses is to be determined by an appropriate allocation thereof among the claims asserted.

4. In all other respects, plaintiff's Motion for Partial Summary Judgment is DENIED.

5. Inasmuch as the foregoing rulings dispose of all of the issues involved in this case, this Order shall be deemed to constitute the final judgment in this case.

6. Plaintiff's application for counsel fees is DENIED. Each party to bear its own costs.