**Richard M. STILLWELL, Rose Stillwell and Robert N. Stillwell, Plaintiffs,**

v.

**BROCK BROTHERS, INC. and Transamerica Insurance Services & Transamerica Insurance Group, Defendants.**

**No. NA 88–107–C.**

United States District Court, S.D. Indiana, New Albany Division.

March 28, 1990.

Michael T. Forsee, Jeffersonville, Ind., for plaintiffs.

Jerry L. Ulrich, New Albany, Ind., Thomas G. Mooney, Louisville, Ky., George M. Streckfus, Jeffersonville, Ind., and Stanley E. Robinson, Clarksville, Ind., for defendants.

## ENTRY

BARKER, District Judge.

On May 20, 1988, the plaintiffs filed a two-count Complaint in the Circuit Court of Clark County, Indiana. The first count alleges damages suffered as a result of the allegedly negligent reroofing of the plaintiffs' house by defendant Brock Brothers, Inc. ("Brock"). The second count seeks a declaratory judgment against Transamerica Insurance Services and Transamerica Insurance Group (referred to collectively as "Transamerica") to the effect that Transamerica is obligated to defend and indemnify Brock against the plaintiffs' suit. Transamerica, in turn, counterclaimed against the plaintiffs, and crossclaimed against Brock. Transamerica seeks a declaration that a policy of insurance (Policy No. 3018 65 32) issued to defendant Brock Brothers ("Brock") does not obligate Transamerica to defend or indemnify Brock against the plaintiffs' suit for damages. The defendants removed this action to federal court on June 13, 1988.[1]

with these procedural rules, specified only the amount of special damages sought ($4,036). The progress of this case, moreover, suggested that the plaintiffs' demand had come down to a level considerably below $10,000.

The defense counsel's rhetorical incredulity notwithstanding, federal courts must often bear the responsibility of policing their own jurisdictional boundaries. In cases like the present one, where the plaintiffs' demand appears to have boiled down to a low level, federal courts justifiably seek assurance that the amount in controversy suffices to confer jurisdiction. The defense counsel having graciously proffered this assurance, the analysis may proceed.

Brock's position with respect to the pending Motion is somewhat ambiguous; although it has not answered Transamerica's cross-claim or amended cross-claim, it has responded to some of the requests for admissions propounded by Transamerica. Brock has admitted that the insurance contract between Transamerica and Brock now before the court is a correct copy of the genuine contract, and that the contract was signed by Curtis Brock, an authorized representative of Brock. Brock has also made two further admissions by failing to respond pursuant to Fed.R.Civ.P. 36(a)[2] to Transamerica's Amended Fourth Request for Admissions. First, Brock admits it received notification that its insurance policy with Transamerica would be cancelled on August 10, 1987, unless an unpaid premium were paid by then. Second, Brock admits receiving notification (on August 28, 1987) that its insurance policy with Transamerica was cancelled as of 12:01 a.m., August 10, 1987.[3]

Brock's admissions demonstrate that the facts establishing the dates of its coverage by Transamerica are uncontroverted. Transamerica is obliged to defend and indemnify Brock against suits for damages stemming from accidents "occurring" between February 23, 1987, and August 10, 1987.

The plaintiffs and Transamerica have stipulated to the facts underlying the plaintiffs' claims, but Brock is not a party to those stipulations. Thus it is not established as between Transamerica and Brock when Brock's alleged negligence or the injuries consequent thereto "occurred."

Transamerica's motion for a declaratory judgment against Brock must therefore be limited to a declaration that Transamerica is not obliged to defend or indemnify Brock for injuries (resulting from Brock's negligence) that "occurred" after August 10, 1987. This determination can be reached independently of the facts stipulated to by the plaintiffs and Transamerica; therefore those facts can be accepted as true for the purposes of this ruling, and Brock need not be continuously dissociated from them.

FACTUAL BACKGROUND

On February 23, 1987, Brock procured a commercial general liability insurance policy from Transamerica. This policy included the following provisions:

SECTION I—COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obliged to pay as damages because of "bodily injury" or "property damage" to which this insurance applies..... This insurance applies only to "bodily injury" and "property damage" *which occurs during the policy period.* The "bodily injury" or "property damage" must be caused by an "occurrence." (emphasis added).

                *       *       *       *       *       *

SECTION V—DEFINITIONS

                *       *       *       *       *       *

9.  "Occurrence" means an accident, including continuous or repeated expo-

---

2.  Federal Rule of Civil Procedure 36(a) provides that each matter of which an admission is requested is admitted by the party to whom the request for admission is served unless such party serves the party propounding the request with a written answer or specific objection within thirty (30) days after service of the request. Transamerica filed its Fourth Request for Admissions on January 8, 1990. It is now mid-March, 1990, and Brock has not responded to the Request.

3.  On August 29, 1988, Brock asserted that it did not have sufficient information to admit or deny that Policy No. 3018 65 32 was cancelled on August 10, 1987, for non-payment of premi-

ums. (Brock's Response to Amended Request for Admissions, Response to Amended Request No. 4). Seventeen (17) months after requesting that admission, Transamerica propounded a Fourth Request for Admissions, again asking Brock to admit that its policy with Transamerica was cancelled on August 10, 1987. Brock has not responded to that request. Brock had enough time between these Requests for Admissions to gain sufficient knowledge to admit or deny the allegation; therefore the Court considers the statements in Transamerica's Fourth Request for Admissions to be admitted under Fed.R.Civ.P. 36(a), because Brock failed to timely respond.

sure to substantially the same general harmful conditions.

This policy requires Transamerica to defend and indemnify Brock for bodily injuries or property damage which "occur[red] during the policy period."

The plaintiffs lived together in a house located at 800 Irving Drive in Clarksville, Indiana. On March 24, 1987, plaintiff Richard R. Stillwell hired Brock to re-roof the plaintiffs' house. (Brock had stated that its home remodeling business was fully insured against negligence or errors in the performance of construction work.) Brock re-roofed the plaintiffs' house pursuant to the contract, completing the job by the end of May, 1987.

The Transamerica insurance policy covering Brock was in effect at the time the plaintiffs contracted with Brock, but was cancelled by Transamerica on August 10, 1987, because Brock had not paid its premiums. In October of 1987, the plaintiffs turned on their gas furnace for the first time since the re-roofing, and discovered that the re-roofing had been done improperly. As a result of the improper re-roofing, the plaintiffs suffered personal injuries and property damages from smoke and fumes which became trapped in their house.

## DISCUSSION

■ As a threshhold matter, this court must ascertain the applicable substantive law. Federal courts in diversity actions must follow the choice-of-law rules of the forum state, in this case Indiana. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Gold v. Wolpert*, 876 F.2d 1327, 1329 (7th Cir.1989).

Where the parties have not otherwise agreed as to the applicable state law, Indiana courts apply the "most significant contacts" rule to determine choice-of-law questions. *W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945). This inquiry requires Indiana courts to apply the law of "the forum with the most intimate contacts to the facts." *Dohm &*

*Nelke v. Wilson Foods Corp.*, 531 N.E.2d 512, 513 (Ind.Ct.App.1988). Indiana courts review such facts on a case by case basis. *Tompkins v. Isbell*, 543 N.E.2d 680, 681 (Ind.Ct.App.1989); *Bencor Corp. v. Harris*, 534 N.E.2d 271 (Ind.Ct.App.1989).

■ The present case involves interpreting an insurance contract; therefore the court looks to the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the place of business of the parties to determine which state has the most significant contacts. *Dohm & Nelke, supra,* 531 N.E.2d at 513; *Utopia Coach Corp. v. Weatherwax*, 177 Ind.App. 321, 379 N.E.2d 518, 522 (1978). Under Indiana law, a contract is deemed made in the state where the last act necessary to make it a binding agreement occurs. *W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417 (1945); *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 600 (7th Cir.1982). Here, Brock's principal place of business is in Kentucky, the Transamerica insurance policy was delivered to Kentucky, and the cancellation notices were sent to Kentucky. Thus the contract was made in Kentucky, and the relationship between Transamerica and Brock centered on Kentucky.

The Indiana Supreme Court has noted, in tort actions based on contracts, that the place of the tort will often be the place with the most significant contacts. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987); *see also Tompkins v. Isbell*, 543 N.E.2d 680, 681 (Ind.Ct.App. 1989). If, however, the place of the tort bears little relation to the legal action, additional factors need to be considered. The *Hubbard* analysis focussed on "the last event necessary to make the defendant therein liable." *Tompkins*, 543 N.E.2d at 681. In the present case, the "last event" was the contracting between Transamerica and Brock, which occurred in Kentucky. This event bears a significant relation to the legal action, so the additional *Hubbard* factors need not be considered.[4] Therefore

---

4. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d at 1074. The factors Indiana courts consult

when the place of the "last event" bears little relation to the legal action are: the place where

under Indiana's choice-of-law rule, Kentucky provides the applicable substantive law because Kentucky has the most intimate contacts with the subject matter of this case.[5] *Cf. State Auto Mutual Ins. Co. v. Spray,* 547 F.2d 397, 400 (7th Cir.1977) (applying Indiana's choice-of-law rule).

■ The parties agree that the only legal issue in dispute concerns the definition of "occurrence." It is undisputed that Transamerica's insurance policy only covers occurrences transpiring within the policy period. The disagreement is whether "occurrence" refers to the time the wrongful act was committed, or to the time the injury was actually sustained. Unfortunately, Kentucky courts have not addressed this particular point of law. Kentucky courts have often, however, looked to the laws of sister states for guidance. In the present case such guidance is particularly persuasive because other jurisdictions have adopted—almost unanimously—a common approach.

Without cluttering this entry with myriad citations, it can be said that every jurisdiction, with the exception of Louisiana, has held that the time an accident "occurs" is the time when the complaining party is actually injured, not the time when the wrongful act is committed. *See* 11 Couch, *Cyclopedia of Insurance Law,* § 44:8 (2nd ed. 1982); *see also* Annot., "Event As Occurring Within Period of Coverage" of "Occurrence" and "Discovery" or "Claims Made" Liability Policies (1985) 37 A.L.R.4th 382, § 3, and cases cited therein; 57 A.L.R.2d 1385. This is because the tort of negligence is not deemed to have been committed "unless and until some damage is done." *Muller Fuel Oil Co. v. Insurance Co. of North America,* 95 N.J.Super. 564, 579, 232 A.2d 168, 175 (1967).

Application of this doctrine to the present case is simple. The "accident" upon which the plaintiffs base their claim did not "occur" within the Transamerica policy period. The plaintiffs admit that they sustained no damages until October of 1987, when they turned on their furnace. The plaintiffs further concede that the Transamerica policy terminated on August 10, 1987. Because the Transamerica policy only covers "occurrences" that occur within the policy period, and the plaintiffs did not sustain an injury within that period, Transamerica is not obligated either to defend or indemnify against the plaintiffs' claim.

To avoid this result, the plaintiffs contend that the Transamerica insurance policy is ambiguous, and must therefore be construed in accordance with their reasonable expectations of coverage. The plaintiffs, citing California cases, argue that the Transamerica policy is ambiguous because it does not define the terms "occurrence" or "accident." Those cases (*see, e.g., Sylla v. United States Fidelity & Guarantee Co.,* 54 Cal.App.3d 895, 127 Cal.Rptr. 38 (1976)), however, have been repudiated by later California cases. In *Maples v. Aetna Casualty and Surety Co.,* the court expressly refused to follow *Sylla's* aberrant path, preferring to rely on the

> unbroken line of authority finding that the term "accident" unambiguously refers to the event causing damage, not the earlier event creating the potential for future injury....

83 Cal.App.3d 641, 647–48, 148 Cal.Rptr. 80, 84 (1978). Subsequent California cases have uniformly followed *Maples* and rejected *Sylla.*[6] More importantly, the Supreme

---

the conduct causing the injury occurred, the residence or place of business of the parties, and the place where the relationship centered. Even if the *Hubbard* factors were considered, they too would point toward Kentucky.

5. Because this case is presently before the court on a Motion for Summary Judgment dealing solely with whether the insurance policy at issue covers the underlying (alleged) negligence of Brock, the analysis is controlled by the place of contracting, not the place of the alleged tort.

Thus it is irrelevant that the location of the plaintiffs' house, where the alleged negligence and damage occurred, is in Indiana.

6. *See Hallmark Ins. Co., Inc. v. Superior Court,* 201 Cal.App.3d 1014, 1018–19, 247 Cal.Rptr. 638, 640 (1988); *State Farm Mutual Automobile Ins. Co. v. Longden,* 197 Cal.App.3d 226, 242 Cal. Rptr. 726 (1987); *Schrillo Co. v. Hartford Accident & Indemnity Co.,* 181 Cal.App.3d 766, 226 Cal.Rptr. 717 (1986).

Court of Kentucky has ruled that the term "accident," as used in insurance policies, "should be interpreted according to the usage of the average man.... An accident is generally understood as an unfortunate *consequence*...." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky.1986) (emphasis added). *Cf. James Graham Brown Foundation, Inc., v. St. Paul Fire & Marine Ins. Co.*, No. 89–CA–2405–MR, —— S.W.2d —— 1990 Kentucky App. LEXIS 31. Thus "accident" refers to the fruits of a negligent act, not to the sowing of the seeds. It is consequence, not cause, that constitutes an accident. Transamerica's failure to define "accident" within the policy does not render the word ambiguous.

Similarly, the term "occurrence" is not ambiguous; it is specifically defined in Transamerica's policy as an "accident." [7] Under Kentucky law, the accident in the present case "occurred" when the plaintiffs suffered the consequences of Brock's alleged negligence. Brock's acts merely created a "hazard," a term defined in Couch as a "source from which an accident may arise." 11 Couch § 44:286. Because Transamerica's insurance policy covers only "accidents"—not "hazards"—occurring during the policy period, Transamerica is entitled to a declaratory judgment that it has no obligation either to defend or indemnify Brock against the plaintiffs' suit.

It is worth noting that the result in this case would be the same under Indiana law. In *United States Fidelity & Guarantee Co. v. American Ins. Co.*, 169 Ind.App. 1, 345 N.E.2d 267, 270 (Ind.App.1976), the Indiana Court of Appeals—quoting 57 A.L.R.2d 1385, 1389—started its analysis of an insurance policy by observing that an accident "occurs" at the time damage is sustained, not at the time of wrongful act.

For the reasons stated above, Transamerica's Motion for Summary Judgment is GRANTED.

It is so ORDERED.

---

7. The policy states that an "[o]ccurence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It is true that an accident "need not be a blow but may be a process." *The Travelers v. Humming Bird Coal Co.*, 371 S.W.2d 35, 38 (Ky.1963). The language cited above is designed to deal with such situations, where the damage is incremental, and can only be discovered at an advanced stage in its development. *Cf. Ins. Co. of North America v. Forty–Eight Insulations*, 633 F.2d 1212, 1222 n. 18 (6th Cir. 1980). In the present case it is undisputed that no damage of any kind occurred until after Transamerica's policy had terminated. Therefore *The Travelers* affords the plaintiffs no relief.