**INDIANA GAS COMPANY, INC., et al., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

**Civil No. 1:95cv101.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Indiana Gas Company.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty and Surety Company, Detroit, MI, for Aetna Casualty & Surety Company.

Thomas W. Yoder, Miller Carson Boxberger and Murphy, Fort Wayne, IN, Patrick Cremin, Michael J. Sehr, Audrey S. Hanrahan, Jerome J. Duchowicz, Haskell and Perrin, Chicago, IL, for Continental Casualty Company, Continental Insurance Company, Greenwich Insurance Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for Home Ins. Co.

Dennis F. Cantrell, Bingham Summers Welsh and Spilman, Indianapolis, IN, Erik H. Aldeborgh, Boston, MA, for Liberty Mutual Insurance Company.

Michael D. Ramsey, James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Kandice L. Kilkelly, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Ins. Companies.

Kenneth W. Biermacher, Dallas, TX, for North River Insurance Company.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell, L.T.D., Chicago, IL, for Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for St. Paul Fire & Marine Insurance Company.

Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Karen H. Flax, Robert C. Johnson, Sonnenschein Nath and Rosenthal, Chicago, IL, for the Travelers Indem. Co.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the defendants' (London Market Insurers) "Motion for Summary Judgment on All Policies for Plaintiffs' Failure to Establish a Fortuitous Accident or Occurrence", filed on July 10, 1996 [1]. The parties completed briefing the motion on August 9, 1996.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the

---

1. Other defendants have joined defendant London Market Insurers' motion for summary judgment.

moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagree-

ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs, Indiana Gas Company, Inc., Richmond Gas Corporation and Terre Haute Gas Corporation (collectively "Indiana Gas"), commenced this action by filing a complaint for declaratory judgment and breach of contract because of the refusal of the five remaining defendant insurance companies to pay claims for third-party property damage tendered to them by Indiana Gas under comprehensive general liability insurance policies. According to Indiana Gas, the underlying property damage arises out of the historical gas manufacturing operations that took place at certain properties now owned by Indiana Gas.

From the early 1800's until natural gas became widely available in the 1940's and 1950's, gas for heating, lighting and cooking was manufactured by superheating coal and, later, coal combined with oil. During the manufactured gas era, more than 1,500 cities and towns across the country had a town gas plant that manufactured and stored gas until it was distributed directly to the homes and businesses of the town through a pressurized underground gas pipeline distribution system. The gas manufacturing process created tar, as well as other residuals and wastes, as a by-product. Unfortunately, the residuals, wastes and by-products from the gas manufacturing process contained hazardous constituents, such as benzene, which have been discovered in the subsurface soil and groundwater at properties where these manufactured gas plants ("MGPs") were operated. Nine such former MGP sites: Shelbyville, Lafayette, Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute, Indiana, are at issue in the claims for property damage which underlie this lawsuit for insurance coverage.

Indiana Gas claims that it has incurred and will continue to incur millions of dollars in liabilities as the result of state and federal law requirements to respond to the property damage at and near certain former MGP sites. According to Indiana Gas, damage to groundwater beneath the former MGP sites from subsurface leaching and migration began at most locations prior to 1955 and continues to the present day.

■ In support of its motion for summary judgment, defendant London Market Insurers ("LMI") argues that the damages caused by intentional acts are not covered by insurance under Indiana law, as fortuity is inherent in every contract of insurance. LMI takes the position that the "occurrences" or "accidents" which Indiana Gas contends are covered under the policies are the continuing releases of hazardous substances which derived from routine business operations and, thus, constitute intentional acts rather than accidents. LMI argues that Indiana Gas mistakenly focuses on the result of its intentional acts, by contending that "occurrences" and "accidents" have taken place because of the damages arising out of the deliberate and intentional acts associated with the routine operations of MGPs.

LMI strongly contends that it must be shown that an "accident" occurred before the inquiry focuses on the question of whether any resultant damage was expected or intended, as required by the relevant policies. LMI primarily relies on *Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484 (7th Cir.1994); *Red Ball Leasing v. Hartford Accident & Idem. Co.*, 915 F.2d 306 (7th Cir.1990); and *Transamerica Ins. Serv. v. Kopko*, 570 N.E.2d 1283 (Ind.1991). This case law clearly supports LMI's position.

In *Brown*, the Seventh Circuit Court of Appeals expressly acknowledged the distinction between the issue of whether an act is an "accident", and the issue of whether the damages arising from that act are "expected or intended". In reconciling two Indiana appellate decisions with *Red Ball Leasing*, an

earlier Seventh Circuit opinion, the Court explained that:

> At first glance, it may appear that *Bolin* [*v. State Farm Fire & Casualty Co.*, 557 N.E.2d 1084 (Ind.Ct.App.1990) ] and [*Auto Owners Ins. Co. v.*] *Stroud*, [565 N.E.2d 1093 (Ind.Ct.App.1991) ], are inconsistent with *Red Ball Leasing*. However, a more exacting look reveals that these cases are not inconsistent. In both *Bolin* and *Stroud*, the insurance companies argued that there was no "occurrence" because the insured had "expected or intended" to cause the injury in question. In *Red Ball Leasing*, however, the insurance company did not argue that the insured "expected or intended" to cause injury. Rather, the insurance company contended that there was no "occurrence" because Red Ball had engaged in intentional conduct which was not an "accident". In essence, the Indiana courts have focused on different terms in the definition of "occurrence" than we have.

*Brown*, 25 F.3d at 488. The Seventh Circuit then continued with the following language:

> Moreover, the Indiana Supreme Court recently held that intentional conduct is not "accidental" and thus not an "occurrence." (Citing *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283 (Ind.1991)).

*Id.*

*Red Ball Leasing*, which was discussed in *Brown*, is an earlier Seventh Circuit opinion which held that a volitional act is not an "accident". In *Red Ball Leasing*, a truck leasing company repossessed leased trucks after an accounting system erroneously indicated that lease payments had not been made on the trucks. The lessee subsequently sued Red Ball Leasing for conversion, breach of contract, and interference with business opportunities. Red Ball Leasing requested that its insurance carrier represent it in the action. The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the insurer, concluding that: "Even if the mistake in Red Ball's accounting procedures triggered the chain of events that ultimately led to the repossession, the decision to take the trucks—an intentional act of Red Ball—is not an 'accident' under the

terms of the insurance policy." 915 F.2d at 311–12.

The holding in *Red Ball Leasing* was reaffirmed in *City of Jasper, Ind. v. Employers Ins. of Wausau*, 987 F.2d 453, 457 (7th Cir. 1994):

> An "accident" for our purposes is defined as "an unusual, unexpected, and unforeseen event." *Red Ball Leasing*, 915 F.2d at 309; 11 Couch, *supra*, § 44:288 at 433. The incident at issue does not satisfy this definition. What happened here, stripped to its essentials, is that an "action," not an "accident", of the City granted Mr. Habig the right to build two duplexes on his land, to the unhappiness of his neighbors who thereupon filed suit. The action was taken purportedly in harmony with the City's zoning regulations, and Habig acted on that in constructing the duplexes. Plainly, by the allegations of the complaint itself, the City's action was prompted by its conclusion that it was authorized by the zoning ordinance and quite as plainly after much litigation, the Court of Appeals of Indiana concluded that it was not. (Footnote omitted). But the City's error and the fact that the property damage could have been avoided does not transform the intended action into an "accident". "A volitional act does not become an accident simply because the insured's negligence prompted the act." *Red Ball Leasing*, 915 F.2d at 311.

*Red Ball Leasing* was also followed by Judge McKinney of the Southern District of Indiana in *Allstate Ins. Co. v. Norris*, 795 F.Supp. 272 (S.D.Ind.1992). In *Norris*, the insured shot a bystander while attempting to "pin down" an assailant. The insurer sought a declaration that the insured's homeowner's policy did not cover the bystander's injuries because the injuries were not the result of an "accident". The policy at issue in *Norris* provided that "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage *arising from an accident* and covered by this part of the policy." (Emphasis added.)

After discussing the facts of *Red Ball Leasing*, Judge McKinney stated:

Under the *Red Ball* analysis, Duane's injuries here clearly did not result from an accident, and therefore are not covered under Norris's policy. This result obtains even if one assumes that Norris did not fire his gun at anyone in particular, because it is undisputed that he meant to fire his gun, and that he meant to fire it in the direction of the house where Duane was standing. Norris's actions therefore were volitional, and clearly not accidental, whether or not their consequences were unforeseen. Thus, Duane's injuries are not covered.

795 F.Supp. at 275.

Similarly, in *Terre Haute First Nat'l Bank v. Pacific Employers Insurance Co.,* 634 N.E.2d 1336, 1338 (Ind.App.1993), the Indiana Court of Appeals stated:

> The Policy states simply that " '[o]ccurrence' means an accident." In the context of insurance coverage, an accident means an unexpected happening without an intention or design. *National Mutual Insurance Co. v. Eward* (1987), Ind.App., 517 N.E.2d 95, 100. Elkins' complaint alleged the Bank's negligence and breach of fiduciary duty in acting as his guardian. In other words, the claim against the Bank arose from a professional relationship and not from an accident. The Bank's purported professional negligence in acting as Elkins' guardian cannot be an accident in the plain and ordinary meaning of that term.

Indiana Gas, however, has taken the position that the "accident" for which it seeks coverage is the unexpected and unintended continuous migration of MGP by-products and residuals through the soil and groundwater and the property damage that has taken place as a result of that migration. In spite of the strong Seventh Circuit precedent discussed above, Indiana Gas relies on *Stillwell v. Brock Brothers Inc.,* 736 F.Supp. 201 (S.D.Ind.1990), for the proposition that it is the *damage* and not the fortuitous act, which constitutes an "accident". In *Stillwell,* the plaintiff homeowners had their house re-roofed by the defendant in May of 1987. The re-roofing was performed in a negligent manner, and when the plaintiffs first turned on the gas furnace in their house in October of 1987, they suffered personal injury from smoke and fumes that became trapped in the house as a result of the negligent re-roofing. Although the plaintiffs' insurance policy had terminated on August 10, 1987, they sought coverage under the policy. 736 F.Supp. at 204, 205. The district court granted summary judgment in favor of the insurance company, finding that the term "accident" was not ambiguous, and ruling that:

> "[A]ccident" refers to the fruits of a negligent act, not to the sowing of the seeds. It is consequence, not cause, that constitutes an accident. Transamerica's failure to define "accident" within the policy does not render the word ambiguous.

736 F.Supp. at 206.

In reply to Indiana Gas' reliance on *Stillwell,* LMI points out that the district court in *Stillwell* did not have the benefit of the *Brown, Red Ball,* or *Kopko* decisions. After careful consideration of all the relevant case law, this court finds the case law supporting LMI's position (and discussed extensively *supra*) to be the better reasoned opinions. Clearly, an intentional act, even one that causes damage, is simply not an accident, even though the damage itself may have been unexpected or unintended.

Other states, including California, have recognized this principle. For example, in *IMCERA Group, Inc. v. Liberty Mutual Insurance Co.,* 10 *Mealy's Litigation Reports— Insurance* #18 (Calif.Ct. of App.2d Dist. Div. 1) (March 12, 1996), review granted, 54 Cal.Rptr.2d 41, 917 P.2d 1164 the California Court of Appeals held that:

> Even if an "accident" under Liberty's 1967–1971 policies can be a gradual (non-sudden) event, it definitely cannot be an intentional act. (See *Shell Oil Co. [v. Winterthur Swiss Ins. Co., supra,* 12 Cal. App.4th [715] at pp. 748–751 [15 Cal. Rptr.2d 815 (1993) ] ). In this case, the trial court found that IMCERA intentionally discharged pollutants onto the soil and that "[a]ny accidents were purely incidental to normal operation of any manufacturing plant and did not change the picture of gradual pollution over time." Consequently, because the cause of the property damage was intentional, not accidental, no cov-

erage or duty to indemnify existed under the policies. The fact that some "incidental" accidents may have contributed to the contamination does not change this result. "[A] company which engages in systematic pollution as a concomitant of its normal business practice cannot claim that such pollution was 'accidental'". (*N.H. Ball Bearings v. Aetna Cas. and Sur. Co.* (1st Cir.1995) 43 F.3d 749, 754, discussing *Great Lakes Container v. National Union Fire Ins.* (1st Cir.1984) 727 F.2d 30, 33; accord, *Lumbermens Mut. v. Belleville Industries* (1st Cir.1991) 938 F.2d 1423, 1428–1430 [where manufacturer engaged in intentional, continuous pattern of pollution as part of business operation, occasional accident resulting in pollution did not confer coverage under liability policy], cert. den. 502 U.S. 1073 [112 S.Ct. 969, 117 L.Ed.2d 134 (1992) ].)

*IMCERA* at 54–55 (footnotes omitted).

Moreover, the distinction between an "accident" or fortuity (the act) and "damages" (the result) is inherent in every contract of insurance. As stated by R.E. Keeton in *Insurance Law:*

A requirement that loss be accidental in some sense in order to qualify as the occasion for liability of an insurer is implicit, when not express, because of the very nature of insurance.

R.E. Keeton, *Insurance Law* § 5.4(a), at 288 (1971), *quoted in* Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 8.02[a], at 308 (8th ed. 1995). Thus, it is clear that it is imperative for an "accident" to have occurred before the issue of whether the damages resulting therefrom were expected or intended need even be considered.

In the present case, Indiana Gas has not made any showing that the acts causing the damages at issue were not intentional. Rather, Indiana Gas claims that there is no "intentional acts" exclusion in the policies, and that at least one of the defendants has acknowledged that its policies cover the unintended consequences of intentional acts. Indiana Gas relies heavily on Aetna's ten-year old internal claims handling manual, which states that:

[I]t is important to understand that intentional acts of an insured may not be excluded. It is only when the resulting bodily injury or property damage is expected or intended from the standpoint of the insured that coverage is excluded for failure to satisfy the occurrence definition. This is a question of fact and often involves a degree of uncertainty.

Aetna Casualty & Sur. Co., *Commercial Technical Claim Manual,* § F–1 at F–1–18 (June 1986).

■ In its reply brief, LMI first points out that Aetna's claim manual is not pertinent to the policies issued by any defendant other than Aetna. Further, LMI argues that the language of the policies at issue is clear and unambiguous and, thus, extrinsic evidence cannot properly be considered by this court. This court agrees with LMI.

Citing to *Freeman v. Commonwealth Life Ins. Co.,* 149 Ind.App. 211, 271 N.E.2d 177 (1971) and *Weinand v. Johnson,* 622 N.E.2d 1321 (Ind.App.1993), Indiana Gas argues that the Indiana courts have found the term "accident" to be ambiguous. However, as LMI notes, in *Weinand,* the Indiana court simply acknowledged that in Indiana it is reversible error to instruct the jury that a plaintiff may not recover if his damages are the result of a "mere" or "pure" accident. The *Weinand* court went on to state that "[s]uch instructions are misleading because they suggest that a defendant is not liable for causing a 'mere accident,' even though the defendant may have been negligent in causing the 'accident'." 622 N.E.2d at 1324–25. Clearly, *Weinand* is not applicable to the present case.

Likewise, *Freeman* held that the term "accident" is ambiguous to laypersons because the term is often used to describe events caused by negligence and fault. Thus, with respect to a contract of adhesion, "reasonable foreseeability" was held to not be the proper test for determining whether the means by which an injury or death was caused was "accidental". 271 N.E.2d at 184. As the present case does not involve a life insurance policy, *Freeman* has little (if any) applicability to the present case. Moreover, language such as that used in the insurance contracts

at issue here was held to be unambiguous by the Indiana Supreme Court in *Kopko, supra,* and also by the *Stillwell* court.

Indiana Gas has also relied on *Eli Lilly Co. v. Home Ins. Co.,* 482 N.E.2d 467 (Ind. 1985), in support of its position that the term "accident" is ambiguous. However, as LMI argues, the *Eli Lilly* court did not consider whether the bodily injury in that case was an "accident". Thus, the court had no occasion to determine whether the term "accident" was ambiguous. Rather, the *Eli Lilly* court held that the determination of when the injury occurred for purposes of the relevant policies was ambiguous, as at least two possible time considerations, exposure and manifestation, were relevant. As it was presumed that Eli Lilly did not intentionally manufacture a product that would injure people, the sole issue was which policies were required to respond to the claim, not whether any policies would respond.

■ Indiana Gas also cites to *Indiana Ins. Co. v. O.K. Transport, Inc.,* 587 N.E.2d 129 (Ind.App.1992), for the proposition that "a split of authority among court decisions in construing a term in an insurance policy demonstrates that the term is ambiguous as a matter of law." (Answer brief at p. 7). In *O.K. Transport,* the court stated that "[b]ased on the policy language alone, we are unable to conclude which result was intended by the parties. Both interpretations strike us as reasonable." 587 N.E.2d at 132. The court then noted that other courts were fairly equally divided on the issue, and then cited a sampling of cases "as examples supporting the proposition that reasonably intelligent people can differ" about the contract language at issue. *Id.* The *O.K. Transport* court did not, as Indiana Gas argues, hold that the split of authority conclusively demonstrated that the policy language was ambiguous.

Additionally, as LMI recognizes, this court has recently rejected the approach advocated by Indiana Gas. In *United Capitol Ins. Co. v. Special Trucks, Inc.,* 918 F.Supp. 1250 (N.D.Ind.1996), this court conducted a lengthy analysis of several terms in an insurance policy. Only after first looking for Indiana precedent did this court then search

for decisions in other jurisdictions and considered those cases pro and con to the parties' respective positions. *Id.* at 1255. This court did not first look to see whether other courts were split on the issue and then mechanically rule in favor of the policyholder. LMI suggests that, just as in *United Capitol,* this court should first look to see whether any Seventh Circuit precedent exists holding the "occurrence" definition to be unambiguous as a matter of Indiana law.

In *Red Ball Leasing, supra,* 915 F.2d at 308–09, the Seventh Circuit found language similar to the language at issue in the present case to be clear and unambiguous. Later in *Brown,* 25 F.3d at 486–87, the Seventh Circuit reaffirmed *Red Ball Leasing,* finding no ambiguity in a policy defining an "occurrence" as "an accident ... which results in bodily injury or property damage...."

This court will follow *Red Ball Leasing* and *Brown,* and thus finds the term "accident" to be clear and unambiguous. Therefore, Indiana Gas' citation to extrinsic evidence is improper, as extrinsic evidence is inadmissible where no ambiguity exists in the contract. *City of Evansville v. Old State Util. Corp.,* 550 N.E.2d 1339, 1342 (Ind.App. 1990).

■ Certain of LMI's policies contain the following definition of the term "occurrence", in these words or in substantially similar language:

> The term "occurrence" whenever used herein shall mean one happening or series of happenings, arising out of or due to one event taking place during the term of this contract.

LMI has taken the position that this wording requires that a "causative event" take place during the policy period, regardless of when any third party property damage takes place. In support of this interpretation, LMI cites to *Pacific Resources Inc. v. Oswego Shipping Corporation,* No. 81 CIV. 7971, 1984 WL 928 (S.D.N.Y. Sept. 26, 1984); *Babcock & Wilcox Co. v. Arkwright–Boston Mfg. Mutual Ins. Co.,* No. 5:91CV 0987 (E.D.Ohio, August 19, 1993), *aff'd* 53 F.3d 762 (6th Cir.1995); and *Public Service Elec. & Gas Co. v. Certain*

*Underwriters at Lloyd's London,* ("*PSE & G*") Civ. Action 88–4811 (JCL) (D.N.J.1994).

In *Pacific Resources,* an insurance policy defined "occurrence" as a "happening or series of happenings, arising out of or due to one event taking place during the term of this policy." The issue involved coverage for the loss of a vessel which was sold in 1975 by an entity which knew it to be unseaworthy. Cracks developed in the vessel's side plates during a voyage two years later, in 1977. An explosion resulted and the vessel sank. The district court held that the policy applicable to the loss was the 1975 policy which was in effect when the vessel was sold, rather than the policy in effect when the vessel sank. The district court explained that the policy was an "occurrence" policy rather than a "claims-made" policy, and thus protected the insured from liability for any act done while the policy was in effect. In contrast, a "claims made" policy protects the insured against claims made during the life of the policy. The district court then specifically held:

> As discussed above, the "event" giving rise to the plaintiffs' loss was the sale of the vessel with the alleged nondisclosures. The fact that the "happening" which precipitated the claim occurred in 1977 when the 1975 policy was no longer in effect does not prevent plaintiff from recovering under the 1975 policy. The liability arose out of an event which occurred in 1975 when the policy was in effect.

*Pacific Resources,* 1984 WL 928 at *4.

In *Babcock & Wilcox,* as in *Pacific Resources* and the case at bar, the term "occurrence" was defined to mean "any happening or series of happenings, arising out of or due to one event taking place during the term of this contract...." The plaintiff/insured claimed that the definition of "occurrence" did not require that the event which was the cause of the personal injury to occur during the policy term, but rather, the policy required that the happening (the injury) occur during the policy period. The *Babcock & Wilcox* court discussed this policy language, and the plaintiff/insured's interpretation thereof, as follows:

Broken into its components, the definition of occurrence has four relevant parts: "[1] any happening or series of happenings, [2] arising out of or due to [3] one event [4] taking place during the term of this contract." Plaintiff's analysis focusses primarily upon the first and third portions of the definition.

Such an interpretation requires the court to ignore the plain import of the sentence; it would have this court apply a phrase at the end of the sentence to a phrase at the beginning of the sentence without regard to any of the material which lies between. Given the fact that the temporal restriction follows the term "event" and is contained in an independent phrase separated from the description of happening by a comma, the plain meaning of the sentence is that the *event,* not the happening, must occur during the term of the contract.

*Id.* at 27. This portion of the district court's opinion was adopted by the Sixth Circuit Court of Appeals. *See* 53 F.3d at 766.

Finally, in *PSE & G,* the New Jersey District Court had before it an action involving a declaratory judgment for alleged liability arising out of historic manufactured gas operations. The policies at issue defined the term "occurrence" to mean "one happening or series of happening arising out of or caused by one event taking place during the term of this contract." This language is identical to the language in the present case, as well as the language in *Babcock & Wilcox* and *Pacific Resources,* except the defining phrase does not have a comma after the word "happening". Nevertheless, the court followed *Babcock & Wilcox* and *Pacific Resources,* stating that:

The Court is satisfied that, absent the comma, the definition of "occurrence" in the 1975–79 policies should be interpreted the same as the corresponding definitions in *Pacific Resources* and *Babcock & Wilcox,* to require that the "event" take place during the policy period. Further, the Court finds that the "event" alluded to in the policy definition refers to the contamination itself, such as a leak or spill, and not to any subsequent leaching or migration of

contaminants. Rather, under the definition leaching or migration would qualify as the "happening or series of happenings arising out of ... [the] event." Therefore, the Court holds that the 1975–79 policies may be triggered only if Public Service is able to present evidence that an "event" as described in the policy definition of "occurrence," occurred during the policy period. *Id.* at 12–13.

Indiana Gas argues that the "occurrence" definition in the policies at issue is ambiguous and must be construed in favor of Indiana Gas. Indiana Gas cites to *Northern Shipping Co. v. Arkwright Boston Manufacturers Mutual Insurance Company*, 617 F.Supp. 136, 138 (E.D.Pa.1985), in support of its argument. However, in *Northern Shipping*, the district court did not rule that the "occurrence" language was ambiguous. Rather, the district court simply applied the language as it was written in the policy to the facts of the case before it. Indiana Gas also cites to *Commercial Union Ins. v. Pittsburgh Corning Corp.*, 553 F.Supp. 425, 434 n. 23 (E.D.Pa.1981). The *Commercial Union* court simply stated, without discussion, that "the policy is unclear on whether the 'occurrence' or the 'injury' must occur during the policy period. This ambiguity also must be construed in the insured's favor." This court first notes that in *Northern Shipping*, the court did not follow its own decision in *Commercial Union*. Thus, this court finds *Commercial Union* to be of little value. Additionally, a decision relied upon by Indiana Gas in support of its argument that the "causative event" need not take place during the policy period, *Washington Natural Gas Co. v. Aetna Casualty & Surety Co.*, No. 91–2–13506–1 (Wash.Super.Ct., King Cty. Sept. 23, 1993), *reported in* Mealey's Lit.Rep.: Insurance, Vol. 7, Iss. 44 (Sept. 28, 1993) at p. 5, Sec. F., involved the exact same policy language as is present in the case at bar. The *Washington Natural Gas* court stated:

The Stone & Webster policies contained language that may properly be portrayed as verbose or even redundant, but it is not language which is either ambiguous or in need of strained rules of construction.

*Id.* at 8. This court agrees that the language in the policy is not ambiguous.[2]

LMI acknowledges that the *Washington Natural Gas* court held that an "event" could be a "process" and "[a]s long as the process is continuous and is taking place during some or all of the term of the contract, it is covered." *Id.* However, LMI urges this court to follow the reasoning set forth in *Babcock & Wilcox* and *PSE & G*.

This court agrees that the cases cited by LMI are the better reasoned opinions. Interpreting the "occurrence" language to provide coverage for "any happening ... taking place during the term of this contract" would, as the *Babcock & Wilcox* court expressly recognized, ignore the plain meaning of the sentence by ignoring the restrictive "arising out of or due to one event" language. Thus, this court holds that the plain meaning of the language, when read as a complete sentence as intended, is to require that the "event" and not the "happening" take place during the term of the contract. As it is undisputed that some of the LMI policies at issue were not in effect during the time the MGP's were in operation, it is clear that summary judgment should be granted with respect to these policies.

*Conclusion*

For all of the foregoing reasons, summary judgment is hereby GRANTED in favor of LMI (and the joining defendants) with respect to the policies affected by this court's rulings as set forth in this order. Further, LMI's motion to strike Exhibit 16 to Indiana Gas' brief is hereby deemed MOOT.

---

**2.** On August 9, 1996, LMI filed a motion to strike Exhibit 16 to Indiana Gas' answer brief. Exhibit 16 consists of the trial testimony of Leslie R. Dew in a 1990 California state court action. Indiana Gas submitted the exhibit in support of its argument that the "occurrence" language was ambiguous. LMI objects to Exhibit 16 for several

reasons, including the reason that extrinsic evidence is not admissible to show ambiguity in a contract. As this court has found that the case law does not support Indiana Gas' argument that the language is ambiguous, and did not rely on Exhibit 16, LMI's motion to strike is moot.